RICHARDSON *et al. v.* MCGEE.

*(Nashville,* December Term, 1951.)

Opinion filed February 9, 1952.

Petition to Rehear Denied March 7, 1952.

TEMPLETON & STEVENS, of Fayetteville, for complainants.

DAY SUGG, of Fayetteville, for defendant.

MR. JUSTICE GAILOR delivered the opinion of the Court.

This is a controversy over the payment of a real estate commission, and the facts are established by the concurrence of the Chancellor and the Court of Appeals.

The original bill was filed by Complainants, who are real estate agents in Fayetteville, to recover commission due them under the terms of a written contract which is

made an exhibit to the bill. The Defendant filed an answer and made the following admissions: "It is admitted that a contract was entered into on the 4th day of April, 1950, whereby complainants were given the right to sell the real estate consisting of the rooming house, restaurant, and fixtures with the exception of a steel safe located in the restaurant and one dresser located in the lobby of said hotel or rooming house. It is admitted that said agreement is filed as Exhibit '1' to the complainants' bill. * * *"

After overruling Defendant's demand for a jury, the Chancellor heard the case on oral testimony, and after the Complainant, C. W. Richardson, had completed his direct testimony, in which he swore that the Defendant had signed the written contract as it was exhibited with the bill, and as it was identified by the Complainant, the Chancellor, over the timely objection of the Complainant, permitted the Defendant to interpose a pleading which is styled, "a special plea of non est factum," and is in part, as follows: "Defendant for further plea says that the written instrument filed as Exhibit 1 to the complainant's original bill, and upon which the complainant's bill is founded, was not executed by him or by anyone authorized to bind him in the premises, and especially was there no execution of that portion of said written instrument filed as Exhibit 1 concerning or agreeing to 5% commission for sale of any part of property mentioned in the bill."

The Defendant made oath that this plea was true.

After hearing further testimony in the cause, pertinent parts of which we shall presently consider, the Chancellor sustained the special plea of non est factum, and dismissed the bill. The Complainants appealed to the Court of Appeals, that Court affirmed the Chancellor.

We granted Complainants' petition for certiorari, have heard argument and the case is so before us for disposition.

On April 4, 1950, McGee was the owner of a hotel, a restaurant, and a taxi stand in Fayetteville, and on that date he signed a written contract whereby he agreed to sell the hotel property and restaurant for $24,000 net, and to pay Richardson as his exclusive agent for the sale, any amount obtained over $24,000. The contract is executed on a printed cardboard form which is in the record, and the concluding paragraph is: "J. Paul Richardson to have all over above price; and *it is further agreed that if by mutual agreement this real estate is sold at or for less than the above named price, the said J. Paul Richardson is to have 5 percent of whatever said property brings.* It is further agreed that all commissions due J. Paul Richardson on such sale shall be paid out of the first proceeds derived therefrom. When sale is made, I, the undersigned, agree to make a good deed to said property at my expense."

McGee, himself, testified:

"Q. He finished the card and you signed it? A. Yes.

\* \* \*

"Q. You put your name on the card without having read it? A. That's right."

After the execution of the contract, Richardson undertook to interest W. R. Askins and others, in the purchase of the property. Askins thought the purchase price too high and refused to buy from Richardson. Later, but during the effective terms of the contract, which was 60 days, Askins bought the hotel, the restaurant and the taxi stand from McGee directly and without the intervention of Richardson. The selling price of the hotel

and restaurant, the only property covered by the contract, was $18,500, which, under the clause quoted above, entitles Richardson to $925 as commission. Since the figure $18,500 is established by the concurrent finding on the evidence, the only question presented by the appeal is one of law, and is whether or not Richardson is legally entitled to a 5% commission on that amount.

The undisputed facts attendant upon the execution of the contract on April 4, 1950, are these: On that day Richardson came to McGee's restaurant and after some conversation with him about a prospective sale of the property, the two men sat down side by side on stools at the counter, and Richardson filled in the blanks in the printed form of the contract and McGee signed it.

The provision for the 5% commission in the event of a sale at less than the $24,000 is all in printing, and there was, therefore, no reason for a discussion of that clause of the contract. There is no suggestion in this record of any fraud or sharp practice by Richardson on McGee. On the contrary, if there was any double dealing, it was practiced by McGee in selling the property without notice to Richardson during the term of the exclusive agency agreement.

Richardson knew that McGee could write but did not know that he could not read. They were sitting side by side on stools at the cafe counter, and there was also present at the time, an employee of McGee, Ray Rees, who operated the restaurant, and apparently ran the hotel for McGee. There is positive evidence that McGee had opportunity to have the contract read to him, and no evidence, whatever, that he was hurried or misled in a hasty signature and execution of the contract.

██ Under these established facts, we think the rule is absolute, that in the absence of fraud or sharp dealing,

one is estopped to repudiate his contract, or avoid the effect of the execution of a contract, when by negligence or indifference, he has failed to read it, or to have it read to him. In the absence of fraud or deceit, the rule is the same for those who can and those who cannot read, and the basis of the rule is one of estoppel, the test being negligence and indifference, and not illiteracy or incapacity.

We find our case of *DeFord* v. *National Life & Accident Ins. Co.*, 182 Tenn. 255, 185 S. W. (2d) 617, directly in point: "It is true that the wife of the insured says that 'he couldn't read anything to amount to anything at all,' and that, while he affixed his signature to the application for the policy he did not and could not read it. This does not, under the rule, in the absence of fraud, justify repudiation of the contents of his contract. In the McKay case [*McKay* v. *Louisville & N. R. Co.*] (133 Tenn. 590, 182 S. W. 874) above cited the Court said, 'the plaintiff is undoubtedly bound in law, whether he read the contract or not,' citing [*Nashville, C. & St. L.*] *Railroad Co.* v. *Stone [& Haslett]*, 112 Tenn. 348, 79 S. W. 1031, 105 Am. St. Rep. 955; *Louisville & N. Railroad Co.* v. *Smith*, 123 Tenn. 678, 134 S. W. 866." 182 Tenn. at page 266, 185 S. W. (2d) at page 621.

The same rule of law is announced in two cases from the Court of Appeals, *Federal Land Bank* v. *Robertson*, 20 Tenn. App. 58, 95 S. W. (2d) 317, and *Lockhart* v. *Moore*, 25 Tenn. App. 456, at page 465, 159 S. W. (2d) 438, where the earlier case of *Berry* v. *Planters' Bank*, 3 Tenn. Ch. 69, 75 is cited and approved.

The duty of an illiterate person to exercise ordinary care to ascertain the contents of a contract which he executes, is discussed at some length in *Austin* v. *Brooklyn Cooperage Co.*, Mo. App., 285, S. W. 1015.

Compare 17 C. J. S., Contracts, Sec. 139; 12 Am. Jur., Contracts, Section 137, and numerous cases there cited.

 Over the objection of Complainant, both Richardson and McGee were permitted to testify that before the execution of the contract by McGee, there had been no discussion of the clause of the contract allowing Richardson a 5% commission in the event of a sale for less than $24,000. Since neither in the pleadings nor proof, is there a charge of fraud, accident or mistake, the admission of this evidence was error and in violation of the parol evidence rule. Apparently the two lower Courts felt that since the "5% clause" was not *discussed*, that it was not a binding part of the contract. We think on this record, that evidence of what was, and what was not discussed, was incompetent, as the suit was based on a written contract, which was to be enforced according to the written terms, without regard to preliminary discussion. *Home Beneficial Ass'n* v. *White*, 180 Tenn. 585, 177 S. W. (2d) 545; *Smithart* v. *John Hancock Mutual Life Ins. Co.*, 167 Tenn. 513, 71 S. W. (2d) 1059; *Dark Tobacco Growers' Co-op. Ass'n* v. *Mason*, 150 Tenn. 228, 263 S. W. 60.

 Finally, in his decree dismissing the bill, the Chancellor sustained the special plea of non est factum. The plea in this cause, as filed and sworn to, and the plea of non est factum generally, Caruthers' History of a Lawsuit, 7th ed., Section 238; Code, Secs. 8761-8789, 9726-9728, deny the *execution* of the instrument. Since the Defendant expressly admitted the execution of the very contract that was exhibited with the bill, the plea of non est factum was unsupported by any evidence.

Reversed and remanded for entry of a decree consistent with this opinion. The Defendant will pay the costs.