EDNA WOODARD, Appellee, v. FLOYD BRUCE, E. H.
GODWIN, d/b/a Loan Investment Company, and Sarah
Sauer, Appellants. —339 S. W. (2d) 143.

Western Section. February 26, 1960.

Certiorari Denied by Supreme Court September 9, 1960.

Campbell Yerger, Graham Moore, Memphis, for appellants.

Grover N. McCormick, Memphis, for appellee.

CARNEY, J. The Chancellor sustained the original bill filed by the complainant below, Edna Woodard, in

which she sought cancellation of a $3,500 note and deed of trust on her home and an injunction against foreclosure under said trust, on the grounds of fraud.

The defendant, Floyd Bruce, is a contractor who did certain repairs on the house and lot of Edna Woodard for which she executed and delivered to him her promissory note in the amount of $3,500 drawing interest at 6% per annum payable at $35 per month and secured by a deed of trust on her house and lot in Memphis, Tennessee. Defendant Godwin, a note broker, paid $2,149 to Bruce for the note and in turn sold the note to the defendant, Sarah Sauer, on the same day for $2,500.

The complainant, Edna Woodard, colored, is a widow occupying a small frame dwelling at 1098 Pearce Street in Memphis, Tennessee, where she has lived for over twenty-five years maintaining her feeble-minded son. The complainant is somewhere close to 55 years of age and is of very poor mentality herself. She testified that her husband had been dead ten years when as a matter of fact he had been dead over twenty-five years.

Her income consisted of $50 per month welfare payment from the State of Tennessee for the benefit of her and her feeble-minded son. She also was the owner of about $1,000 in stock in the Union Protective Insurance Company, a Negro insurance and burial company. The record does not indicate any income from this stock, however.

The little frame dwelling which she occupied had two rooms upstairs which she had been accustomed to renting from time to time to roomers for $5 per week each. Sometimes she collected the rent and sometimes she didn't.

The City of Memphis, under its urban renewal program, notified Edna Woodard that a considerable amount of repairs would have to be done to her home. Within just a few days the defendant, Floyd Bruce, appeared upon the scene and solicited the contract of making the repairs for her. In collaboration with the defendant, Godwin, he prepared a contract to do the repairs for the price of $3,500 to be secured by a note and trust on the house and lot drawing interest at 6% per annum and payable to the order of Bearer at the rate of $35 per month.

The work started sometime about the first of June and was completed on the thirteenth of June. On this same date the defendant, Godwin, note broker, through his attorney, sold the note and trust to the defendant, Mrs. Sarah Sauer, for $2,500 and paid the contractor, Bruce, the sum of $2,149 out of the proceeds of sale of the note.

Edna Woodard paid about four monthly payments of $35 each on the note and then ran out of money. Foreclosure proceedings had been instituted when her attorney filed suit in the present case seeking an injunction against foreclosure and a cancellation of the note and deed of trust alleging fraud and usury on the part of the defendants, Godwin and Bruce, and alleging that the defendant, Mrs. Sarah Sauer, was not a purchaser in good faith without notice of the defects in title.

The original bill averred that the complainant was mentally weak and that she was imposed upon by the joint conduct of the defendants, Godwin and Bruce. The bill also averred that the actual value of the work done by the defendant, Bruce, in making repairs to the complainant's

home is far less than the $3,500 contract price and worth more nearly $700.

The defendant, Godwin, contended that he was not a party to the contract and simply purchased the note from Bruce without knowledge of any fraud or overreaching. Likewise the defendant, Sarah Sauer, contended that she was a bonafide purchaser of the note and trust for value without notice from the defendant, Godwin.

The Chancellor found that the defendants, Bruce and Godwin, were engaged in a joint venture; that the complainant, Edna Woodard, was mentally weak and was imposed upon and taken advantage of by the defendants, Bruce and Godwin, and that the contract price of $3,500 was greatly in excess of the actual value of the services rendered and therefore that such contract was so tainted with fraud that the note and deed of trust should be cancelled and set aside.

The Chancellor further found that the defendant, Sarah Sauer, had failed to carry the burden of proof of showing that she was a holder in due course without notice of defect in said promissory note and deed of trust as provided by T.C.A. sec. 47-159. Accordingly, the Chancellor made permanent the injunction against foreclosure, ordered the note and deed of trust cancelled and ordered a reference to determine the amount of money actually due and owing by Edna Woodard to Mrs. Sarah Sauer on the basis of quantum meruit, namely, the fair and reasonable value of the repairs and improvements actually made to her home by the defendant, Bruce, and declared a lien on the property to the extent of the amount to be determined upon said reference.

The defendants, Bruce and Godwin, perfected their appeals to this court and the defendant, Sarah Sauer, filed the record for writ of error in lieu of an appeal.

The defendant, Floyd Bruce, has filed thirteen assignments of error and the defendant, E. H. Godwin, has adopted the assignments of error of the defendant, Bruce. Godwin has also added the additional assignment that the court erred in finding that the defendants, Bruce and Godwin, perpetrated a fraud on the defendant, Edna Woodard.

We do not deem it necessary to discuss all thirteen assignments of error separately. Basically, it is the contention of Bruce and Godwin as follows: That Bruce, the contractor, made a valid contract with Edna Woodard, which she understood and signed, to do the repairs and improvements on her home in accordance with the requirements of the City of Memphis at the price of $3,500 which was at least $1,000 in excess of what the defendant, Bruce, says would be the cash price of such repairs; that the $3,500 or credit charge was necessary because the loan came in the category called "substandard loans"; that Mr. Bruce was unable to carry his own paper and that it was necessary that he make arrangements with Mr. Godwin, as he had done on other occasions, to dispose of this paper for him and therefore, he had an arrangement with Mr. Godwin to take this paper at approximately $2,400; that the defendant, Bruce, did make the repairs in accordance with the contract, sold the note to Godwin as agreed upon, receiving a total consideration of only $2,149 therefor, and that he, Bruce, was not guilty of any fraud and should be hence dismissed.

It is the contention of Mr. Godwin that he is not a contractor but engaged in the business of buying and selling notes; that he was concerned only with getting a good title to the note and deed of trust; that he told Mr. Bruce that he would handle the note when the repairs were completed and the title to the property cleared and certified; that he, Godwin, does not hold the notes which he buys until maturity but that he sells them to his several customers and that he sold this particular note of Edna Woodard to Mrs. Sarah Sauer for $2,500 and that he, Godwin, after paying Bruce, costs and attorney's fees, totalling $2,358, made a profit of only $142; that he, Godwin, had nothing to do with the contract between Bruce and the complainant, Edna Woodard.

The contention of Mrs. Sarah Sauer is that she is a holder in due course for value without notice of any defect in the title to said property and that she is entitled to a foreclosure of said note and deed of trust for the face amount of said note less the four monthly payments paid by Edna Woodard.

The case was tried before the Chancellor upon oral testimony. The witnesses for the complainant consisted of herself, her former son-in-law, J. Kirk, a mail carrier, whose wife, the daughter of complainant died about 20 years ago, the testimony of O. T. Westbrook, an official of the Union Protective Insurance Company, and a carpenter named Hawkins who estimated the cost of the repairs and improvements done by defendant Bruce to the complainant's home to be several hundred dollars less than the $2,500 which Bruce testified would be the cash price for the repairs.

Both Kirk and Westbrook testified that the mental capacity of the complainant, Edna Woodard, had been deteriorating for a number of years and that she had very limited knowledge and capacity in financial matters.

The complainant had been a former school teacher in the rural schools of Shelby County but had not taught for about thirty years. She fully understood that she signed an agreement to pay $3,500 for the repairs at the rate of $35 per month. She lived in the house and supported herself and feeble-minded son on $50 per month welfare payments plus some small income from the renting of the two rooms upstairs. Apparently she had saved approximately $200 out of the welfare checks and the room rent at the time she made the contract with Bruce.

The complainant, Edna Woodard, received a notice from the city dated May 23, 1957, notifying her that an inspection had been made of her house and lot and that certain repairs attached to the notice would be necessary. The notice authorized her to appear on May 30, 1957, at a designated address, if she wished, to discuss the necessary repairs but the notice also informed her that she could discuss the matter by phone.

A colored man named Ruffin informed the defendant, Bruce, that the complainant had received the notice from the city to make repairs and within a few days the defendant, Bruce, appeared upon the scene, obtained the complainant's signature to a written contract to do the repairs at a price of $3,500 and also had her execute a note in the amount of $3,500 drawing interest at 6% per annum and payable $35 per month and a deed of trust on her house and lot securing the payment of said note. The defendant, Bruce, paid Ruffin $25 as a gratuity or

tip for locating this business for him. The note and deed of trust were dated May 28, 1957.

The defendant, Bruce, acted as Notary Public and took the acknowledgment of complainant to the deed of trust and during his negotiations with the complainant she never had an opportunity to discuss with anyone the amount of the repairs to be done, the reasonableness of the charges therefor, nor her ability to pay for said repairs.

The defendant, Bruce, in his testimony, admitted that he did not even ask the complainant how much income she had or the source of the funds out of which she could repay the note but he contented himself with asking her the one question whether or not she could pay $35 per month and that she said she could.

O. T. Westbrook, the official of the Union Protective Insurance Company, testified that he had known the complainant for many years; that she had helped him in organizing the Union Protective Insurance Company by giving a deed of trust on her house and lot to meet the requirements of the State Banking Department to help the corporation get started and that she had received about $1,000 worth of stock in the corporation over the years in return for her lending of credit to this corporation which now has assets valued in excess of $1,000,000.

Westbrook testified that for the past several years the complainant had been mentally unable to attend to her business but that she had credit with his firm and could have borrowed the money necessary to make the repairs to her house from his firm if she had asked for the same.

The defendant, Bruce, admitted that the contract was at least $1,000 higher than he would have charged for the same repairs and improvements on a cash basis. He did not explain to the complainant that he was making an additional $1,000 charge because it was to be on credit instead of cash.

■ Under all the facts and circumstances we concur in the finding by the Chancellor that the defendant, Bruce, did not act in good faith toward and did actually in fact overreach the complainant, Edna Woodard, in the transaction and took advantage of her lack of mental capacity to obtain from her a $3,500 note and security therefor greatly in excess in value of the amount of repairs which he intended to make to her home.

■ We quote with approval from the Chancellor's finding as follows:

"It is well established that mere inadequacy of consideration in itself, unaccompanied by circumstances raising a presumption of fraud, unless the inadequate consideration be gross and manifest, is not, in general, sufficient ground to set aside an executed contract.

" 'If there is nothing but mere inadequacy of price, the case must be extreme, in order to call for the interposition of equity. Where the inadequacy does not thus stand alone, but is accompanied by other inequitable incidents the relief is much more readily granted.

" 'Where the accompanying incidents are inequitable and show bad faith, such as concealments, misrepresentation, undue advantage, oppression on the part of the one who obtains the benefit, or ignorance,

*weakness of mind,* sickness, old age, incapacity, pecuniary necessities, and the like on the part of the other, these circumstances combined with inadequacy of price, may easily induce a Court to grant relief, defensive or affirmative.' Stephens v. Ozbourne, 107 Tenn. 572 [64 S. W. 902].

"3. Pomeroy's Eq. Jur. Sec. 928.

"If mental weakness is accompanied by other inequitable incidents and is taken undue advantage of, equity not only may but will interpose with defensive or affirmative relief.

"3. Pomeroy's Eq. Jur. Sec. 947.

"Further, whenever a person is in pecuniary necessity and distress, so that he would be likely to make any undue sacrifice, and advantage is taken of such condition to obtain from him a conveyance or contract which is unfair, made upon an inadequate consideration, and the like, even though there be no actual duress or threats, equity may relieve defensively or affirmatively.

"3. Pomeroy's Eq. Jur. Sec. 948.

"In this cause we have a contract made for insufficient consideration by a person of weak mind in necessitous circumstances. This amounts to constructive fraud."

█ Having found as a fact that the defendant, Bruce was guilty of fraud in his dealings with and toward the complainant, Edna Woodard, we must necessarily hold that the Chancellor was correct in rescinding the contracts procured as a result of said fraud in so far as Bruce was concerned. Therefore, all of the assignments

of error of the defendant, Bruce, are respectfully overruled.

We now consider the insistence of the defendant, Godwin, that he was not a party to the contract between the defendant, Bruce, and the complainant, Edna Woodard, but that in reality he was only the purchaser of the notes. The uncontradicted proof shows that Mr. Godwin was in on the transaction from the beginning. Just as soon as Mr. Bruce located the job he went to Mr. Godwin and explained the whole transaction to him and made arrangements with Mr. Godwin to finance the deal.

Exhibit B to the complainant's testimony purports to be the original contract for the execution of the repairs and appears to have been signed by E. H. Godwin himself and we quote said agreement in full:

"E. H. Godwin & Co.
"Insurance—Real Estate Sales—Loans
—Home Improvements
67 N. Cleveland St.
Memphis, Tennessee

Date May 28, 1957

"To: Edna Woodard

"Address: 1098 Pearce, Memphis, Tennessee

"We agree to make the improvements as set out below to your property located at No. 1098 Pearce Street Memphis City Tennessee State for the sum of $3,500.00:

"Repair according to city requirements on their inspectors report dated May 20, 1957.

"And pay all closing costs.

"We further agree to furnish all necessary labor and materials and that all work will be done in a workmanlike manner and in accordance with standard practice. Materials used in performing this contract will be listed on the reverse side, and made a part of this contract.

"This instrument shall become binding on E. H. Godwin & Co. upon the acceptance thereof in writing by E. H. Godwin & Co. by one of its officers or upon commencing performance of the work; it being understood that this instrument, upon such acceptance contains all, and the only, agreements between E. H. Godwin & Co. and owners or myself, and that no representative of E. H. Godwin & Co. has made any statements, representations or agreements, verbal or written, modifying or adding to the terms and conditions herein set forth.

"E. H. Godwin & Co.

/s/ E. H. Godwin

Representative

"We accept this proposal and acknowledge receipt of this contract and agree to pay on the following terms: monthly payments of $35.00 until paid.

"Make all checks payable to this company.

Approved:

"/s/ Edna Woodard E. H. Godwin & Co.

Purchaser By ————————————

Authorized Officer"

In addition, Mr. Godwin testified that when he showed the note, deed of trust and house and lot to Mr. Harry Sauer, son of the purchaser, Mrs. Sarah Sauer, he made the following statement:

"Q. Did you tell him about your negotiations with Mr. Bruce? A. I think at the time I told him it was under my contract for the work, that the woman received a good job, and she got her money's worth on the job, and she got more work than from the average contractor.

"Q. Did you tell Mrs. Sarah Sauer anything about this? A. No, sir."

■ From the reading of the record we concur in the finding of the Chancellor that the defendant, Godwin, was not only fully acquainted with the details of the transaction between defendant Bruce and complainant Edna Woodard but that he was an actual participant therein; that it was a joint enterprise, namely, Bruce was to do the work and the defendant, Godwin, was to finance the deal.

The defendants, Godwin and Bruce, both rely most strongly upon the case of Richardson v. McGee, 193 Tenn. 500, 246 S. W. (2d) 572. In that case our Tennessee Supreme Court held that a party who could not read was estopped to repudiate his contract providing for a broker's commission on the sale of real estate when by negligence and indifference such party failed to have the contract read to him. A study of this case reveals that the Supreme Court expressly stated that the rule was being applied in the absence of fraud or sharp dealing. In the present case the Chancellor found fraud and sharp dealing on the part of both defendants. Hence, His Honor the Chancellor was correct in holding that the decision in the case of Richardson v. McGee was not controlling.

It follows that all of the assignments of error of the defendant, Godwin, are respectfully overruled.

### Assignments of Error by Mrs. Sarah Sauer

The purchaser of the note, Mrs. Sarah Sauer, has adopted all thirteen assignments of error filed by the defendants, Bruce and Godwin, and also has filed eight additional assignments of error.

T.C.A. sec. 47-155 of our Negotiable Instruments Law provides as follows:

"47-155. Defective title—What constitutes.—The title of a person who negotiates an instrument is defective within the meaning of this law when he obtained the instrument, or any signature thereto, by fraud, duress, or force and fear, or other unlawful means, or for an illegal consideration, or when he negotiates it in breach of faith, or under such circumstances as amount to a fraud. (Acts 1899, ch. 94, sec. 55; Shan., sec. 3516a63; Code 1932, sec. 7379.)"

We have already found that the defendants, Bruce and Godwin, were guilty of fraud in obtaining the $3,500 note and deed of trust from Edna Woodard and therefore, the title of Godwin who negotiated the note is defective under the authority of T.C.A. sec. 47-155 quoted above.

T.C.A. secs. 47-152, 47-158 and 47-159 provide as follows:

"47-152. 'Holder in due course' defined.—A holder in due course is a holder who has taken the instrument under the following conditions:

"(1) That it is complete and regular upon its face;

"(2) That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;

"(3) That he took it in good faith and for value;

"(4) That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it. (Acts 1899, ch. 94, sec. 52; Shan., sec. 3516a60; Code 1932, sec. 7376.)"

"47-158. Holder not in due course—Subject to original defenses—Title derived from holder in due course.—In the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were nonnegotiable. But a holder who derives his title through a holder in due course, and who is not himself a party to any fraud or illegality affecting the instrument, has all the rights of such former holder in respect of all parties prior to the latter. (Acts 1899, ch. 94, sec. 58; Shan., sec. 3516a66; Code 1932, sec. 7382.)"

"47-159. Presumption as to holding in due course. —Every holder is deemed prima facie to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as holder in due course. But the last mentioned rule does not apply in favor of a party who became bound on the instrument prior to the ac-

quisition of such defective title. (Acts 1899, ch. 92, sec. 59; Shan., 3516a67; Code 1932, sec. 7383.)''

On June 13, 1957, Mrs. Sauer gave her check in the amount of $2,500 payable to the Loan Investment Company (a trade name for E. H. Godwin) and the check was endorsed by Mr. Godwin and handed to Johnson B. Rhem as escrow agent. Mr. Rhem used the proceeds of the $2,500 Sauer check to pay the defendant, Bruce, $2,149 and the remainder he used to pay title fees, his own compensation, and the net of $142 he remitted to Mr. Godwin.

 Since Mrs. Sauer received the note and deed of trust from Mr. Godwin whose title thereto was defective, the burden of proof was cast upon her to prove that at the time the note and deed of trust were negotiated to her she had no notice of any infirmity in the note or defect in the title of Mr. Godwin and that she acted in good faith in the purchase of the note and deed of trust.

Mrs. Sauer, testifying in her own behalf, stated that she had money available for investment purposes; that she bought the note in question on June 13, 1957, for $2,500; that she does not know whose note it was; that she did not know the name of the people involved in the transaction; that her son, Harry Sauer, told her that the note was for sale; that her daughter-in-law took her by to look at the house and lot and she told her daughter-in-law that she would buy the note; that she did not know who sold her the note; that she never talked to Mr. Godwin about the note; that she never talked to Mr. Bruce about the note; that her son, Harry Sauer, never told her anything about the details of his negotiations with either Godwin or Bruce; that she would not make a statement

one way or the other as to whether or not her son, Harry Sauer, acted as her agent; that she never talked to Edna Woodard and didn't know the name or her face or anything and had no dealings whatsoever with her and finally when asked if she knew that Mr. Godwin was the contractor on the house she answered, "I know nothing about it; I just know nothing." (Tr. 277.)

On cross-examination Mrs. Sauer emphasized that she knew nothing about the transaction of any of the parties; that she did not know who had the note for sale; that she did not discuss it with her son, Harry Sauer, and she said further, "All I know, I looked at the property, and I gave this check to my son and how the transaction was handled I do not know."

The son, Harry Sauer, testified that he is in the insurance business and real estate business and that he assisted his mother in guiding her investments; that on the day before "we purchased it" Mr. Godwin came to his office stating, "I would like for you to go and look at a mortgage I have for sale;" that he looked at the property, told his mother about it; then his wife took the mother over and showed her the property and the mother came back and said it looked safe to her. Mr. Sauer testified that Mr. Godwin told him that he was the owner of the note and that he was the contractor for the repairs on the house and that he did not know of Mr. Bruce being in the transaction at all.

Mr. Sauer admitted on cross-examination that he had bought many notes from Mr. Godwin on many different occasions. Further that he did not discuss with Mr. Godwin the improvements that had been put on the Woodard property but that he could see that it had been

painted and cleaned up and that Mr. Godwin told him the note was for repairs; that when he inspected the property he did not see Edna Woodard nor ask to see her and he asked no questions as to whether or not she, as the maker of the note, would be able to keep up the payments and went further to say that he was not interested to see whether or not the maker was in fact able to keep up the payments.

The Chancellor found that the defendant, Mrs. Sarah Sauer, had not carried the burden of proof that she was a holder in due course. Our reading of Mrs. Sauer's testimony impels us to the opinion that she was somewhat less than frank in her testimony.

She filed a sworn answer to the original bill in which she quite freely admitted that she purchased the note upon the advice of her son, Harry Sauer, and that her son, Harry Sauer, acted at all times as her agent. In her testimony she showed a reluctance to admit that she purchased the note upon the advice of her son, Harry Sauer, and a reluctance to admit that he was acting as her agent.

Also in Mrs. Sauer's sworn answer filed in this cause she made the following statement: "She had never had any dealings whatsoever with any of the other defendants * * *" This court remembers well the case of Providence A. M. E. Church v. Sauer, 45 Tenn. App. 287, 1959, 323 S. W. (2d) 6, 9, in which this same defendant, Mrs. Sauer, acting through the same son and agent, Harry Sauer, purchased from the same defendant, E. H. Godwin, certain promissory notes secured by deed of trust on Negro church property in Memphis, Tennessee. The principal amount of the notes was $20,000 and Mrs. Sauer

purchased the notes for the sum of $15,000. From said opinion we quote as follows:

"It appears that the defendants, Harry Sauer and Ida Sauer, together with Mrs. Sarah Sauer, mother of Harry Sauer, are engaged in the real estate and insurance business in Memphis, Tennessee, incident to which they make collections and have bought promissory notes at a discount, some from defendant Godwin, and that they have been so engaged for approximately nine years. Their operations were principally conducted through a corporation known as D. Sauer & Company, located at 1213 Poplar Avenue, Memphis, Tennessee, Mrs. Sarah Sauer being the president of the corporation and Hary Sauer its secretary and treasurer.

"Defendant Godwin approached Harry Sauer and undertook to sell to him the $20,000 of notes executed by the A. M. E. Church for $15,000. According to the Chancellor's finding of facts, Harry Sauer did not, at that time know that the church had agreed to accept the sum of $10,000 net to it."

In the former case the Chancery Court of Shelby County purged the $20,000 A. M. E. Church note of usury in the amount of $5,000, Mrs. Sauer appealed and this court affirmed the action of the Chancellor.

The testimony of Mrs. Sauer in this case that she didn't know who owned the Woodard note or from whom she was buying the note is most unconvincing.

Likewise, the testimony of her son, Harry Sauer, that he was out inspecting the premises and didn't ask to see Edna Woodard, the owner of the property and maker

of the note and wasn't even interested in whether or not she could make the monthly payments on the note which he was recommending to his mother to purchase does not indicate good faith on his part.

"The intention to remain ignorant of infirmities in negotiable paper or of defects in the title of the person negotiating it, and not merely failure to make such inquiry as a reasonably prudent man would make under the circumstances, constitutes bad faith on the part of the person taking it and prevents him from being a holder in due course." 8 Am. Jur.—Bills and Notes—Section 390—Wilful Ignorance.

■ ■ We think the ignorance of Mr. Harry Sauer and his mother of the facts and circumstances surrounding the execution and sale of the note and deed of trust in this case, if in fact they were ignorant, was the result of wilful ignorance on their part. We concur in the finding of the Chancellor that Mrs. Sauer has failed to carry the burden of proof showing her good faith and that therefore she is not a holder in due course and takes said note and deed of trust subject to all of the defenses available to Edna Woodard against the defendants, Bruce and Godwin.

■ Since we have found that there was fraud on the part of Bruce and Godwin in the inception of the note and deed of trust in the present case and since we hold that Mrs. Sauer is not a holder in due course of said note and deed of trust, it follows that the said note and deed of trust must be set aside as to all three defendants and the cause remanded for a reference to determine the amount due and owing by Edna Woodard for the repairs to her home on a quantum meruit basis.

It becomes unnecessary to discuss all of the many assignments of error separately.

All of the assignments of error of all of the defendants are respectfully overruled and a decree will be entered in this court affirming the action of the Chancellor in accordance herewith and remanding the cause. The appellents, Floyd Bruce, E. H. Godwin and Mrs. Sarah Sauer, and their sureties will be taxed jointly and severally with the costs of this appeal.

Avery, P. J. (W. S.), and Bejach, J., concur.