SAM TAYLOR et ux., Appellee, v. BROOKLINE SAVINGS AND TRUST COMPANY, Appellant.—
405 S.W.(2d) 590.

Eastern Section. August 26, 1964.

Certiorari Denied by Supreme Court December 7, 1964.

L. Forster Miller, Johnson City, for appellant.

Jack E. Vaughan, Johnson City, for appellee.

HUMPHREYS, J. We adopt the following statement of the case on appeal from the appellant's brief:

"This suit was filed by the Complainant to secure a perpetual injunction against the Brookline Savings and Trust Company from further prosecuting a suit at law in Johnson City, Tennessee, under the style of Brookline Savings and Trust Company v. Sam Taylor, et ux, and a decree declaring the note void and uncollectible. Tr. pp. 4-6.

The original bill alleges:

(a) That the Complainants never signed the note sued on in the court at Johnson City.

(b) That the Complainants were misinformed by agents of the American Veneering Company, said agents committing a fraud upon them.

(c) That Brookline Savings and Trust Company was not holder in due course because it was aware of the fraud being practiced upon the Complainants. Tr. p. 5.

The answer of Brookline Savings and Trust Company denies any fraud was practiced or that, if there was fraud, it had knowledge of it; that it was a holder in due course; that the Complainants are estopped at this late date from making any such claims, because the Complainants during a long period of time had been making payments on the note and had executed a completion agreement stating that the contract had been completed by American Veneering Company to the satisfaction of the Complainants, which completion agreement the Brookline Savings and Trust Company relied upon. Tr. pp. 12, 13.

In view of the fact that the Complainants in the equity suit confessed judgment at law no affirmative relief has been asked in this court.

The Chancellor heard the case upon oral testimony and found that fraud had been committed against the Complainants by agents of the American Veneering Company and that the Brookline Savings and Trust Company had knowledge of the fraud and could not have been an innocent purchaser for value; that the note should be cancelled and the injunction made perpetual. Tr. pp. 17-24.''

The opinion of the Chancellor, containing his findings of fact and conclusions of law is as follows:

''Sam Taylor and Coretha Taylor, citizens and residents of the Ninth Civil District of Washington County, Tennessee, complainants, file their case in the Chancery

Court in Washington County, Tennessee, in Johnson City, Tennessee, against the Brookline Savings and Trust Company, a foreign corporation with its principal place of business in Pittsburgh, Pennsylvania.

The complainants allege that on or about the 20th day of October, 1953, a written contract with the American Veneering Company of Johnson City, Tennessee, was entered into for the purpose of renovating complainants' home, in which contract the American Veneering Company was to place new siding on the house, repair or replace doors and windows and paint the same, and make a cement porch. The complainants allege that the American Veneering Company through its agents failed and refused to complete this contract; that the complainants (sic) failed to replace a door which they took down and carried away; that they failed to build a cement porch and that the siding job has collapsed and has reached a state of disrepair, and has in reality damaged the house instead of benefiting the property involved.

The complainants allege that before the work was completed that they received a notice from the Brookline Savings and Trust Company that said bank had purchased the contract and note representing the amount of money complainants were to pay for such work.

The complainants further allege that the contract amount was in the amount of Fourteen Hundred and Twenty-Six Dollars but that the actual amount which the Brookline Savings and Trust Company sought to collect is considerably more.

The defendants filed a bill in the Law Court for Johnson City, Tennessee, to enforce payment of said note and

sued to recover the amount of Sixteen Hundred and Sixty Dollars and Eighty-eight Cents with interest and attorney's fee.

The complainants, alleging fraud and inequities, duress, and misrepresentation on the part of American Veneering Company filed a petition in the Chancery Court to remove the cause to this court because of the unavailable equitable defenses in Law Court but said defenses in Law Court (sic) but said defenses can be made available in a court of Chancery.

The defendants have filed their answer and assert that it is a holder in due course and that it is not advised of the background and matters affecting the circumstances and facts leading up to the execution of the alleged contract.

The Court has carefully weighed and considered the testimony produced on this the sixteenth day of October, 1963. The testimony by Sam Taylor in the case numbered 9875 paints a picture of fraud, collusion, misrepresentation, overreaching and deception of the highest decree. The Court reaches that conclusion based upon the evidence deduced from the whole record. It is the contention of the complainant, Sam Taylor, that the alleged writing which purports to be a note should be cancelled, declared a fraud and a nullity, and that is the basis upon which the complainant is seeking the final and total relief in this cause.

Sam Taylor testified that he owns a house worth about Thirty-Five Hundred Dollars; that Frank Calman and Guy Barnhardt visited his home on a number of occasions and represented to the complainant and his wife that he would repair their home; that he would repair

a concrete porch, put in a new door, put siding on the house, and repair the roof of the house. He testified that this contract was not complied with; that the defendants, their agents and employees took a door from his home and never returned it and that he was compelled to buy a door from Carr Brothers to replace the door at his home; that the concrete porch was never finished, and that the siding was deteriorating and was falling from the home and that it was worth less money than it was at the time that the agents undertook to repair the home.

There was positive testimony in the record that a similar job could be done by a reputable builder for three or four hundred dollars but that the defendants are seeking to recover on a note in the amount of Sixteen Hundred and Sixty Dollars.

We are here dealing with a colored man who is not experienced in the ways of scheming and conniving and deception, and therefore, it is the duty of this court to stand as a guardian between the helpless and the weak and the uneducated to see that people of that type receive justice at the hands of the law, and that they are protected from a horde of swindlers and schemers and defrauders that invaded this entire area in about 1952 and '53. The Court has had a number of similar cases to this before the Court and arrived at the same conclusion.

But let's review the evidence of Sam Taylor. Sam Taylor further said and testified under oath that he did not sign any note for Sixteen Hundred Dollars but that understood that he was only to pay approximately Two Hundred Dollars; that for the use of his home as a model or sample home upon which to place sample siding that

he would receive a certificate of Fifty Dollars to be applicable to the reduction of the cost price for each home in the neighborhood. That never, of course, materialized and is a part of the unfolding of the fraudulent scheme.

The proof shows that the roof was never repaired, the door was not repaired, and the concrete porch was not repaired, and that the siding had deteriorated as has been heretofore repeated.

It is strangely significant that Guy Barnhardt and Frank Calman, agents and representatives of the American Veneering Company and who have gone in and out of the doors of the Brookline Savings and Trust Company of Pittsburgh and later showed up on their payroll as paid employees are not here. The defendant in this case could have these witnesses present and when these former employees are not present, the Court must conclude and draw the inference that their testimony would be contrary, derogatory to the contention of the defendants in this cause of action. When witnesses could be obtained by the Brookline Savings and Trust Company and are not here and no explanation made for their absence, then there is a strong presumption that their testimony would implicate the defendant and explode their theory of being an innocent purchaser for value or an innocent holder in due course.

The proof shows by the sworn testimony of George N. Adams who says that he is a Vice-President of the Brookline Savings and Trust Company and after the defendant Brookline Savings and Trust Company knew and had knowledge that many complaints had been made about the way and manner and fraudulent method of

handling paper in this area of Tennessee by the American Veneering Company and after his Bank had given orders to a Mr. Silvers, who was the directing head of the American Veneering Company in Pittsburgh, that he would not take any more of their paper, notwithstanding that knowledge and that fact, which is sworn to by Mr. Adams himself, who is present in Court here today, he then hired this Mr. Guy Barnhardt to attempt to collect paper from some of these very individuals whom he had attempted to sell these jobs as far back as 1952. The same Guy Barnhardt was kept on the payroll of the Brookline Savings and Trust Company up until 1955; in view of that evidence and that knowledge and that information, it is inescapable that this Court must conclude that the Brookline Savings and Trust Company had knowledge of his activities, knew about the circumstances and could not claim in a court of equity to be a holder in due course, or having received this paper in good faith.

The Court is amazed at the testimony of the distinguished banker and Vice-President of Brookline Savings and Trust Company in that he testifies under oath that the girls in his bank and secretaries frequently filled in the dates and missing information and completed negotiable paper after it had arrived at the Bank; and that he assumed, that he could not say whether it was done in this case or not but that it was either done there or in the American Veneering head office in Pittsburgh, Pennsylvania, and not in the State of Tennessee.

The testimony runs through this entire case that the alleged note was signed in blank and that the writing was placed in there after it left Johnson City, Tennes-

see, and went to Pittsburgh, Pennsylvania; and that the notes were completed after arriving in Pittsburgh, Pennsylvania.

The law is very clear where the notes are altered or changed or added to or supplied and filled in, not in the presence of the borrower or the contractor for the alleged contract, then that note does not speak the entire truth—it is not an instrument or a courier that passes through channels of commerce without a luggage attached to it. It is cast in a shadow; the circumstances under which it is added to casts a doubt upon its validity and upon its speaking the absolute truth as far as the bar is concerned. Therefore, the notes do not meet the tests and the note specifically in this case does not meet the test of being a negotiable note taken by a holder in due course for value as is required by law.

Another significant bit of the testimony of Mr. George N. Adams is to the effect that the note was discounted on the 19th day of October, 1953, for Eleven Hundred and Fifty Dollars, but the certificate of completion of this job was not signed in Johnson City, Tennessee until the 20th day of October, 1953, or a day after the alleged discount; therefore, the Court must conclude that this note was not taken for value and taken as a holder in due course.

The evidence is clear here that there was a working together, hand in glove with Guy Barnhardt, the same man that went out and fraudulently and schemingly wrote these alleged contracts and working with other agents sold these alleged contracts, and then this same man, after exploiting the people in this entire neighborhood and area, took this same paper to the American

Veneering Company and it was discounted to the defendant and then the defendant hired this very man to go out and undertake to collect these notes. That has a badge of fraud and a badge of bad faith pinned all over it.

The former employee of the American Veneering Company in Johnson City, Tennessee, Mr. Vaughn, who is now an attorney at this bar, who has been practicing for some ten years, stated that he was employed back in 1953 by the American Veneering Company as an inspector to see when the jobs were completed. He states that he was fired by the American Veneering Company because he informed some of these people not to pay the notes, to seek legal advice, that they were being taken advantage of, and that he didn't have anything to do with these alleged wrongs and alleged frauds upon the people. He testified further that the value which they received was not anything near the actual value which they should receive for the same amount of money; and he testified very strongly that he advised many of these people to seek legal advice in connection with these cases.

There is another piece of evidence in this record that the Court cannot overlook. A document by the American Veneering Company lists a Donald Steppe as an individual who placed a furnace in the home of Sam Taylor, the complainant in this cause, but the defendants have not produced a telephone directory that shows that any such man ever existed. In an effort to bolster up a fraudulent, collusive, deceptive combination, this evidence is brought to the attention of this Court in an effort to show that the American Veneering Company placed a Five Hundred Dollar furnace in the home of this colored man, Sam Taylor. He positively testifies that no such

furnace as this was placed in his home by American Veneering Company or any of their agents. The defendant, Brookline Savings and Trust Company, here have simply introduced a piece of paper listing a man by the name of Donald Steppe. It is strange indeed that an allegation that a man or company had placed a Five Hundred Dollar furnace in a home and no such man is brought into this Court, his whereabouts is not explained, his existence is not explained, the company is not explained and there is no explanation for such an absurd and unreasonable introduction of this piece of evidence in an effort to try to influence the Court in a case of this kind; and this matter should be investigated by the office of the District Attorney of this county.

· . There is another piece of evidence that this Court has taken into consideration in the light of this entire background. A credit report, which the banking company testified that it required in each of these cases is introduced from Newport, Tennessee, a distance of some ninety miles from Johnson City, when there are two or three reliable credit agencies in Johnson City, Tennessee who belong to the credit association for the purpose of obtaining credit records; and this piece of evidence was introduced to show that a credit report had been made, but the instrument is not signed; it is not authenticated in any respect; and the Court, therefore, looks with a critical eye upon the introduction of this credit reference as a basis for establishing a factual credit report on Sam Taylor.

The Court has carefully considered all of the evidence and weighed and considered the witnesses from the witness stand and has listened to all of the witnesses, and has examined the documents introduced in this case, and

is abundantly satisfied that the note is usurious, that it is in bad faith, that it is predicated upon fraudulent, collusive and deceptive background, that it was born and conceived in fraud and misrepresentation and was fraudulent from the very beginning; that it was added to and filled in and materially changed after it left Johnson City, Tennessee, and can have no effective use for any purpose and further the Court is of the opinion that the defendant is not a holder in due course and that the note should be cancelled and declared null and void and the obligation alleged against the complainant, Sam Taylor, in this case is hereby declared null and void and he is nothing held, and the defendants are taxed with the costs of this cause.

Let the decree be prepared accordingly.'' Tr. pp. 17A-23A.

With respect to this holding by the Chancellor appellant assigns the following errors:

''1. The learned Chancellor erred in holding that Brookline Savings and Trust Company was not an innocent purchaser of the note for value.

2. The learned Chancellor erred in refusing to hold that the Complainants were estopped to claim fraud at this time.

3. The Chancellor erred in making the injunction perpetual and taxing Brookline Savings and Trust Company with the costs of the cause.''

Since the only evidence introduced with respect to whether appellees were defrauded by American Veneering Company was that of the appellees, and since the Chancellor held this evidence does establish fraud, and we concur, the only question for our consideration is

whether appellant is a holder in due course of the note sued on. And, we are of opinion it is not for reasons we shall state briefly.

Fraud in the execution of the note having been shown, it became appellant's duty under T.C.A. sec. 47-159 to show affirmatively it was not aware of this defect. It undertook to do this by introducing a witness, a Mr. Adams, a vice-president of Brookline Savings and Trust Company. Mr. Adams had no independent recollection of the facts and circumstances relating to the discounting of appellees' note to his company, so he undertook to prove the manner of its probable discount by describing the manner in which such discounts were ordinarily handled. In the course of this description of the customary practices with respect to the discounting of American Veneering Company's commercial paper to appellant, this witness testified that it was a practice of the bank on occasions when commercial paper had been signed in blank, as in this case, for the bank to assist in filling out the note and the accompanying papers, after which it would accept the same on the endorsement of the contractor.

With respect to the filling out of the blank note and the accompanying instruments sued on, Mr. Adams testified:

"COURT: Now, just a minute here. The transaction took place here in Johnson City, Tennessee—

A. That's right.

COURT:—and you say the note then was completed and filled out by the American Veneering Company in Pittsburgh,

A. Possibly.

COURT: Well, it had to be filled out either by your bank or by the American Veneering Company one. Now which one was it, that did it?

A. That filled it out?

COURT: Yes?

A. I couldn't establish that." Tr. p. 80.

"RDQ7 Now, in this particular case, we'll get to it now, the Taylor case, did you complete with anybody in your bank complete this contract after it got to you?

A. I wouldn't know. The contract?

RDQ8. Yes?

A. We didn't have anything to do with the contract.

RDQ9. The notes?

A. The notes, I wouldn't know. I wouldn't know of my own personal knowledge.

RDQ10. You didn't? You didn't yourself?

A. Oh, no.

COURT: Well, that's the very note he's suing on and he said frequently they changed them in the bank. I recall the testimony.

MR. MILLER: Frequently. Not this particular note.

COURT: He said other notes.

MR. MILLER: Yes, yes he did.

RDQ11. Was this note brought to you in the same manner and the form it is now, or not? Or do you know? If you don't, say so.

A. The original note was brought in that form.

RDQ12. All right. That's all." Tr. pp. 92-93.

We are unable to agree with appellant that this evidence shows the note was in complete form at the time it was discounted to the bank. To the contrary of this, Mr. Adams' testimony is clearly to the effect he had no independent recollection or knowledge of this particular note. This, of course, must be the case as Brookline, being a fifty million dollar bank, evidently handled a large volume of discounted paper, and this discount occurred practically ten years before Adams testified.

It also appears from the evidence, with an explanation therefor which is not quite satisfactory, that the note was discounted to appellant on October 19, 1953, whereas it is dated October 20, 1953.

T.C.A. sec. 47-152 defines a holder in due course as one who has, among other things, taken an instrument that is complete and regular upon its face. Since the evidence in this case is more fairly susceptible than not to the interpretation that Brookline was aware the note had been signed in blank (which is uncontradicted) and assisted in the filling in of the blank spaces therein, this being a reasonable explanation for its having been discounted to the bank on the 19th and filled out and dated thereafter on the 20th, at a time when Brookline owned it, Brookline could not be a due course holder. Atkinson v. Englewood State Bank, 141 Colo. 436, 348 P.2d 702; Hannen v. Peoples State Bank, 195 Ky. 58, 241 S.W. 355; Commercial Credit Corp. v. Freiler (La. Appeals) 42 So.2d 296.

We think it is also true that since under T.C.A. sec. 47-159 the burden of proving it was a due course holder shifted to Brookline on the showing of fraud in the inception of the instrument, it has not borne this burden when

its only proof with respect to the instrument is such that makes it probable the instrument was discounted by the payee on the 19th in blank.

It results Brookline's assignments must be overruled unless it can rely on the renewal of the note as estopping complainants to rely on the fraud at the time of its execution.

The only evidence in the record with respect to the renewal note is a denial on the part of appellee that he signed it and his statement that he was not certain the signature supposed to be his wife's is hers. It also appears the revision note, which the appellant company says was executed in order to extend complainant's payments over a five-year period and thus reduce the same, provides on the face thereof that the payments are to be made over a thirty-six months period, which would call for total monthly payments much less than the amount of the note.

So, in consideration of the uncontradicted evidence the note was signed in blank, the finding of fraud in the inception of the note, the failure of appellant to call its agent who was supposed to have secured appellees' signatures to the revision note to explain the obvious discrepancies on the face of the note, and to contradict appellee's testimony as to its execution; and, in consideration of the Chancellor's finding and holding the appellee, Sam Taylor, was in fact of such mental level as to be easily overreached, and that he was overreached, and thus he was and is particularly the concern of a court of equity; and, on account of our finding and holding the appellant is not a holder in due course, but a holder of an instrument subject to the defect of fraud in its inception, we are of opinion it would be inequitable and unjust to

permit an estoppel to be worked so as to allow appellant to have a judgment on the revision note.

In support of the conclusions we have here reached, we point out further, that about this time, when American Veneering Company had appellees sign a blank contract form, a blank note and a blank completion certificate, and these were so handled by it and Brookline that the note was discounted on October 19, 1953, whereas it was not dated until October 20, 1953, Brookline admits through its witness Adams it had received such material and substantial complaints with respect to American Veneering Company's fraudulent and illegal activities in and around Johnson City, that it had called on American Veneering Company to mend its ways, and ultimately stopped accepting its paper.

It seems to us that, while suspicious circumstances in and of themselves are inadequate to deprive one of the status of a due course holder, knowledge of such irregularities in American Veneering Company's conduct as are admitted by Brookline, together with the irregularities existing here with respect to the discounting of the note and the dating thereof, coupled with the long and evidently close association between Brookline and American by reason of which it is reasonable to infer Brookline was at least familiar with American's plan of operation and its practice of securing blank endorsement of notes and contracts, we must agree with the Chancellor that on the facts of the case, independent of the operation of T.C.A. sec. 47-159, and aside from the fact that under the evidence the instrument sued on could just as well have been discounted in blank as otherwise, Brookline is not a due course holder by reason of knowledge which put it on inquiry. On effect of close association of payee and holder

see 11 Am.Jur.2nd, Bills and Notes, sec 440; Woodard v. Bruce, 47 Tenn.App. 525, 339 S.W.2d 143.

And, we think for this additional reason an estoppel should not be worked on account of the execution of the revision note, if it was actually executed. Brookline, being guilty of fraud in law along with American Veneering Company, which was guilty of fraud in fact, should not be permitted to rely in a court of equity on the doctrine of estoppel against parties such as these appellees.

Accordingly, all assignments are overruled and the decree of the Chancery Court is affirmed.

Shriver and Chattin, JJ., concurring.