In re HALLS TRADING POST, INC. dba Halls Furniture Mart, Debtor.

Leon STEINBERG, Trustee, Plaintiff,

v.

CRESWELL & CO., INC., also dba Cresco Finance Co., Defendant.

Bankruptcy No. 3–81–00176.
Adv. No. 3–81–0541.

United States Bankruptcy Court,
E. D. Tennessee.

Dec. 4, 1981.

Leon Steinberg, Trustee, pro se.

R. Louis Crossley, Jr., Knoxville, Tenn., for defendant Creswell & Co.

### MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

At issue in this adversary proceeding instituted by a trustee in bankruptcy is whether the defendant holds a perfected security interest in goods (inventory) sold to the debtor by the defendant. When the goods were delivered to the debtor, the debtor or the debtor's agent signed an "invoice" or "delivery ticket" containing a retention of title clause. The defendant asserts a valid security interest was created thereby. The trustee disagrees.

### I

In 1978, and thereafter, Halls Furniture Mart was purchasing appliances from Creswell & Co. for resale. On June 25, 1980, a meeting was held between E. L. Fielden, Jr., president of Halls Trading Post, and John Creswell, president and owner of Creswell & Co. Also, present at this meeting were Billy Ray Hemphill, an employee of Halls, and Ben Young, sales manager of Creswell. According to Creswell the meeting was held because Creswell had been experiencing collection problems with Halls. However, Creswell still hoped to use Halls as an outlet for damaged and obsolete merchandise. Creswell stated at trial that he advised Halls that such an arrangement would require "special terms."

The testimony of the parties as to the events occurring at the meeting or thereafter is conflicting, but either during the June 25 meeting or subsequently, Fielden signed a financing statement for Creswell. Fielden testified at trial that at the time of execution the financing statement was incomplete. According to Fielden the statement did not show either the debtor's name or the secured party's name. The financing statement was recorded in the office of the Secretary of State on September 10, 1980. Ex. 1.

On June 25 or 26 Ben Young, Creswell's sales manager, unsuccessfully attempted to obtain Fielden's signature to a security agreement. In August 1980 at another meeting Fielden placed a stamp on the agreement—

"Halls Trading Post, Inc.

Phone 922–1911"

but testified that he refused to sign the agreement because it contained a clause granting Creswell a security interest in all "present and hereafter acquired inventory of dealer." Ex. 2.

Creswell shipped appliances to Halls Furniture Mart on at least ten occasions after the June meeting.[1] Each shipment was accompanied by an invoice or delivery ticket containing a retention of title clause. These invoices or tickets were signed by either Mr. Fielden or Bill Hemphill, an employee of Halls.

---

1. Shipments were made on the following dates: June 26, 1980 (two shipments), July 2, 1980 (two shipments), July 9, 1980, July 10, 1980, July 21, 1980, August 7, 1980, September 16, 1980, and October 6, 1980.

On February 3, 1981, Halls Trading Post filed a petition in bankruptcy seeking relief under Chapter 7 of the Bankruptcy Code. On February 20, the trustee gave notice to all creditors of his intention to sell the inventory of the debtor. This was done and Creswell now asserts a security interest in $12,598.00 proceeds derived by the trustee from the sale. The trustee contends that Creswell does not hold a valid security interest in the goods sold and that its claim should be allowed only as an unsecured claim. The trustee argues that the "Halls Trading Post" stamp on the security agreement does not constitute a "signature." See T.C.A. § 47–9–203.

At the trial on August 10, 1981, the trustee produced convincing proof that the "stamp" on the security agreement was not intended as a signature. Accordingly, the court announced that judgment would be entered in favor of the trustee. On August 21, 1981, Creswell filed a motion to alter or amend the judgment.[2] Creswell now insists that the invoices or delivery tickets contain a retention of title clause which constitute the reservation of a security interest. The trustee denies that these documents constitute valid security agreements. According to the trustee, the documents were signed only for the purpose of acknowledging receipt of the goods, not for the purpose of granting a security interest.

## II

In order to create an enforceable security agreement the debtor must have signed an instrument which grants a security interest and which contains a description of the collateral. T.C.A. § 47–9–203(1)(b).

Creswell, on ten different occasions, delivered appliances to Halls Furniture Mart. An invoice or delivery ticket went along with each delivery. Ex. 2. Appliances delivered were listed on the documents by model and serial numbers. In addition, at the top of each document the following clause appears:

"It is agreed and understood that the title to the below described property remain in the name of the seller, until fully paid for, and if collected by an attorney, by suit or otherwise, I, or we, agree to pay all fees and cost of collection. In case of default of any payment due and not paid, entire balance becomes due."

Although all of the documents were signed, only three were actually signed by E. L. Fielden, Jr. The others bear the signature "Bill Hemphill."

As heretofore stated, Creswell argues that the documents constitute valid security agreements. The trustee, however, asserts that the parties did not "intend" the documents to constitute security agreements. Further, the trustee argues that only three of the documents were signed by Fielden, the others being signed by a "delivery man" who had no authority to execute security agreements on behalf of Halls Trading Post, Inc.

"As a general principle, one who accepts a written contract is conclusively presumed to know its contents and to assent to them, in the absence of fraud, misrepresentation, or other wrongful act by another contracting party. Thus, ignorance of the contents of a contract expressed in a written instrument does not ordinarily affect the liability of one who signs it. . . ." 17 Am.Jur.2d Contracts § 149.

The Tennessee Courts have applied this rule on several occasions in cases in which one of the parties to the contract signed the contract without reading it. In *Richardson v. McGee*, 193 Tenn. 500, 246 S.W.2d 572 (1952), a real estate agent filed suit against the seller of a house to collect a commission provided for in the contract signed by the parties. The defendant/seller argued that he signed the agreement unaware of the existence of the clause. The defendant, being unable to read, had signed the contract without having it read to him. The court concluded that

"the rule is absolute, that in the absence of fraud or sharp dealing, one is estopped

---

2. Since no judgment had been entered at that time, the motion was premature. The court, therefore, considered the motion as a motion to make additional findings, Bankruptcy Rule 752.

to repudiate his contract, or avoid the effect of the execution of a contract, when by negligence or indifference, he has failed to read it, or to have it read to him. In the absence of fraud or deceit, the rule is the same for those who can and those who cannot read, and the basis of the rule is one of estoppel, the test being negligence and indifference, and not illiteracy or incapacity." *Id.* 246 S.W.2d at 574.

This holding was restated by the Tennessee Court of Appeals in *Evans v. Tillett*, 545 S.W.2d 8 (Tenn.Ct.App.E.S.1976). In that case the plaintiffs' daughter was killed in an automobile accident. Plaintiffs filed suit against the two companies responsible for construction of the highway on which the accident occurred. Defendants filed a third party action against one of the drivers involved in the accident. However, the third party action was dismissed because of a release signed by the plaintiffs. Defendants then filed a motion for summary judgment, arguing the release had the effect of releasing the third party defendant and "all other persons liable...." The plaintiffs maintained they had signed the release after being told the instrument released only the third party defendant. Although the court held that the motion for summary judgment should not have been granted, the court did state that

"Ordinarily, one having the ability and opportunity to inform himself of the contents of a writing before he executes it will not be allowed to avoid the effect of it by showing that he was ignorant of its contents or that he failed to read it." *Id.* at 11.

■ Even though the above cases do not involve the creation of security interests, T.C.A. § 47–1–103 [3] dictates that those cases be followed. The retention of title clause appears on each of the documents signed by

Fielden and Hemphill. As to the three documents signed by Fielden, an officer of the debtor corporation, this court finds those documents grant to Creswell a security interest in the appliances delivered.[4]

■ The remaining documents were signed by Bill Hemphill, an employee of Halls. There is no proof in the record, however, that Hemphill was authorized to execute security agreements on behalf of Halls Trading Post, Inc.

"An agent may, of course, be given the express authority to contract on behalf of the principal, or he may have the implied or apparent power to enter into such a contract. In the absence of an agreement to the contrary, the authority of an agent to make a contract on behalf of the principal may be inferred from authority to conduct a transaction if the making of the contract is incidental to the transaction, usually accompanies it, or is reasonably necessary to its accomplishment. Authority to contract on behalf of the principal may arise from usage or a custom of business. Also, contracts made by the agent with third persons within the scope of the agent's apparent authority are binding upon the principal where the principal has held him out as possessing such authority or has manifested in some way that such authority is the agent's real authority." 3 Am.Jur.2d, Agency § 84.

The evidence produced at the trial of this matter indicates only that Hemphill was the agent of Halls Furniture Mart for the purpose of picking up and delivering furniture. Absent proof that Bill Hemphill had any authority to sign contracts or security agreements, the documents signed by Hemphill will not be held to be valid security agreements.

---

**3.** "Supplementary general principles of law applicable.—Unless displaced by the particular provisions of chapters 1 through 9 of this title, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mis-

take, bankruptcy, or other validating or invalidating cause shall supplement its provisions." T.C.A. § 47–1–103.

**4.** As noted heretofore, a financing statement previously had been filed in the office of the secretary of state. T.C.A. 47 -9 401(1)(c).

Creswell, therefore, holds a valid security interest only in the appliances listed on the June 6, June 26, and July 9, 1980, documents. The proceeds derived by the trustee from the sale of those appliances, less expense of administration, will be turned over to Creswell. The balance of Creswell's claim will be allowed as unsecured.

This Memorandum constitutes findings of fact and conclusions of law, Bankruptcy Rule 752.