IN RE ESTATE OF MARY FIRLE.
HATTIE GOODSPEED AND OTHERS, APPELLANTS.[1]

March 23, 1934.

No. 29,739.

[1]Reported in 253 N. W. 889.

Frank J. Collins, Smith, Callahan & Carlson, and Edward J. Kotrich, for appellants.

H. D. Irwin, for respondents.

I. M. OLSEN, Justice.

This appeal stands as an appeal from a judgment of the district court of Hennepin county dismissing an appeal to that court from an order of the probate court of said county allowing the final account of the administrator of the estate of Mary L. Firle, deceased, and from a decree distributing the property of said estate to William Firle, as the adopted son of said decedent. The appellants are Hattie Goodspeed, Minnie Hartig, Ella Applegarth, and Harriet Cooper, four sisters of the decedent. The respondents are said William Firle, to whom the estate was decreed, and H. D. Irwin, the administrator of the estate.

On motion of the respondents the district court dismissed the appeal. Judgment of dismissal was entered, and appellants appealed therefrom to this court. The motion in the district court to dismiss the appeal was made on the files and return of the probate court and an affidavit of H. D. Irwin, as attorney for respondents. The files and return of the probate court, together with said affidavit, are in the record here. There is no settled case nor any return of the evidence presented in the probate court.

The controversy between the parties in the probate court was whether William Firle was the adopted son of decedent and so entitled to be appointed as administrator, or to select the administrator, of the estate, and to receive the remainder of the property after payment of debts and expenses of administration. The

residue of the estate, mostly real estate, is of the value of about $8,000.

Mary L. Firle died in October, 1931. She was then a resident of Hennepin county, and her property was located in that county. Thereafter Hattie Goodspeed petitioned the probate court for the appointment of one Carl J. Swanson as administrator of the estate of decedent, and William Firle petitioned that court for the appointment of himself as administrator, basing his right to appointment on the ground that he was the adopted son of decedent. Hattie Goodspeed then filed objections to the appointment of William Firle on the ground that he was not the adopted son of the decedent and had no interest in the estate, and Firle filed objections to the appointment of Swanson on the ground that Hattie Goodspeed was not an heir or entitled to have an administrator appointed and had no interest in the estate.

In that situation the petitions and objections noted came duly on for hearing before the probate court on December 17, 1931, and hearing was continued until the next day. Hattie Goodspeed appeared in support of the petition to have Swanson appointed and in opposition to the petition of William Firle for appointment. William Firle appeared personally and by H. D. Irwin as his attorney. Whether any attorney appeared with Hattie Goodspeed at said hearings is not shown by the records. The court heard evidence, and thereupon, on December 18, 1931, at the request of William Firle, appointed H. D. Irwin as administrator of the estate. But the hearing on the question of whether William Firle was the adopted son of decedent was not then completed or closed and no decision thereon made, and such hearing was continued to February 19, 1932. On that day all the parties appeared before the court and further evidence was heard. Hattie Goodspeed and her three sisters presented their evidence in opposition to the claim of William Firle that he was the adopted son of decedent. The court thereupon on that day, after hearing and considering all the evidence introduced at both hearings, found and adjudged that William Firle was the adopted son of decedent and her next of kin and sole heir at law. No appeal has been taken from the order appointing Irwin as ad-

ministrator or from the order finding that William Firle was the adopted son and sole heir of decedent.

■ The order appointing Irwin as administrator was an appealable order. 2 Mason Minn. St. 1927, § 8983 (2). The appointment of the administrator here in question was by a separate order of the probate court made on December 17 or 18, 1931. It said nothing about who the heirs were. The order appointing the administrator, not having been appealed from and the time to appeal therefrom having expired, is final and cannot now be questioned on the ground that he was not a proper or qualified person to be appointed. This is not an attack on the appointment on the ground of fraud or mistake. Tomlinson v. Phelps, 93 Minn. 350, 101 N. W. 496; Savela v. Erickson, 138 Minn. 93, 163 N. W. 1029; Connelly v. Carnegie D. & F. Co. 148 Minn. 333, 181 N. W. 857; First T. & S. Bank v. U. S. F. & G. Co. 161 Minn. 88, 200 N. W. 848; Id. 163 Minn. 168, 203 N. W. 612; In re Estate of Simon, 187 Minn. 399, 246 N. W. 31; In re Capuzzi's Estate, 306 Pa. 27, 158 A. 555.

■ The appeal to the district court, under a notice dated December 21, 1932, is an appeal from the order made by the probate court on December 6, 1932, allowing the final account of Irwin, as administrator, and from the final decree of distribution made by said court on the same day adjudging that William Firle was entitled to the estate and assigning the same to him. The appellants filed written objections to allowance of the final account and to the granting of a final decree of distribution, on the ground, among others, that William Firle was not the adopted son of decedent and therefore not entitled to inherit. The objections were overruled by the probate court. No question was raised as to the order appointing the administrator. No evidence was heard. The appeal to the district court was dismissed on motion, without a trial or hearing, and judgment of dismissal entered.

It is contended that the order appointing the administrator was a final adjudication that William Firle was the adopted son of decedent, that such adjudication cannot be questioned or attacked on appeal from the final decree of distribution, and that there is a bar by former judgment.

At the time the appointment was made there had been no trial or determination of the question of heirship, and the order makes no reference to that issue. The order does not and could not properly determine heirship in that situation. It does not and could not assign or distribute any property of the estate. That is left, under our probate law, to be determined and done by the final decree of distribution.

The proceeding to probate an estate, from its inception up to and including the final decree, is a pending and continuous cause. The final decree is the final step and judgment in the case, determining who are the heirs and distributing the estate to them. It is the only decree provided by our statute, in general administration proceedings, for that purpose. Any prior, interlocutory order or decree by the probate court purporting to determine heirship is not appealable and not final. We find no indication of any legislative intent that the probate court shall at any time prior to the final decree conclusively determine heirship. Omitted heirs, not named in the petition for administration, or not then in being, may, at any time before the final decree is made and in some instances even at a later time, appear and become entitled to part or all of the estate.

By our statutes, 2 Mason Minn. St. 1927, § 9498, on appeal here from a judgment of a district court, this court may review any intermediate order made by the district court prior to judgment where such order involves the merits or affects the judgment appealed from. Under this statute this court has reviewed both nonappealable and appealable intermediate orders of the district court on appeal from the judgment. Thorp v. Lorenz, 34 Minn. 350, 25 N. W. 712; Adamson v. Sundby, 51 Minn. 460, 53 N. W. 761; Haug v. Haugan, 51 Minn. 558, 53 N. W. 874; Schoch v. Winona & St. P. R. Co. 55 Minn. 479, 57 N. W. 208; Macauley v. Ryan, 55 Minn. 507, 57 N. W. 151; Bond v. Welcome, 61 Minn. 43, 63 N. W. 3; De Blois v. G. N. Ry. Co. 71 Minn. 45, 73 N. W. 637; Baxter v. Coughlin, 80 Minn. 322, 83 N. W. 190; State v. O'Brien, 83 Minn. 6, 85 N. W. 1135; Chadbourne v. Reed, 83 Minn. 447, 86 N. W. 415; Bilsborrow v. Pierce, 112 Minn. 336, 128 N. W. 16; 299; Harcum v. Benson, 135 Minn. 23, 160 N. W. 80; Peterson v. Township of Manchester, 162

Minn. 486, 203 N. W. 432; Lundblad v. Erickson, 180 Minn. 185, 230 N. W. 473. This statute does not directly apply to appeals from the probate to the district court, but it indicates to some extent the legislative intent as to the scope of review on appeal from a final judgment.

The text in 15 C. J. p. 1021, § 441, has this statement:

"Until an estate is completely administered, any previous order entered therein may be directly attacked in the probate court when application is made for another order which involves a further step in the administration," citing Ford v. Ford, 117 Ill. App. 502.

This would not apply in this state as to prior intermediary appealable orders which, under our decisions, have been held final unless appealed from. The holding in Ford v. Ford, 117 Ill. App. 502, is based on the earlier case of Bliss v. Seaman, 59 Ill. App. 236; Id. 165 Ill. 422, 46 N. E. 279.

In the case of In re Estate of Hall, 155 Minn. 46, 192 N. W. 342, 343, litigation was had in the probate court as to whether decedent's husband should take under the will or as an heir at law under the will or as an heir at law under the statute. The probate court made findings of fact and conclusions of law that he was entitled to take his distributive share of the estate as an heir at law under the statute. The order and decree so holding was held to be an interlocutory decree, not appealable, and subject to review on appeal from the final decree of distribution. The court said [155 Minn. 49]:

"The order does not purport to assign or distribute the property or any part thereof. * * * It does not give respondent the right to any specific property, or to any specific part or amount of the property. A further order or decree is necessary to carry it into effect. Before respondent will be in position to demand or receive any part of the property, a further order or decree must be made assigning it to him. * * * It is the general rule that no appeal lies from the action of a court which requires a subsequent order or judgment to give it effect. The appeal should be taken from the order or judgment which gives effect to the conclusion reached by

the court, not from what is, in effect, its findings of fact or conclusions of law. * * * The interlocutory order decreeing that he is entitled to such share may be reviewed, and his right to it be determined, on an appeal from the final decree."

In State ex rel. Kelly v. Probate Court, 83 Minn. 58, 85 N. W. 917, an order of the probate court denying the petition of Kelly to be restored to capacity was being reviewed by *certiorari*. It was claimed that an order restoring him to capacity would necessarily have the effect of removing his guardian, and therefore the order was appealable as one removing or refusing to remove the guardian. The court held that the appeal statute could not be so construed, that the statute providing an appeal from an order removing or refusing to remove a guardian was intended to apply only to an order appointing or removing a guardian in a proceeding instituted for that express purpose, and not to an order which might result in such removal.

So, in our present case, the order appointing an administrator does not purpose to assign or distribute the property or any part thereof. It does not give William Firle the right to any specific property. It does not purport to pass upon the question of heirship. The further decree of the probate court was required to give it any such effect. As to that question, it was only an interlocutory order, and the appeal was properly taken from the final decree. The order appointing the administrator could not even indirectly result in any decree of heirship or distribution of property to any certain person or persons.

The general rule that, where a question has been duly litigated and determined by one court its final decision or judgment thereon cannot be attacked collaterally in another suit in the same or in a different court, is invoked. This is elementary. But there is here no collateral attack upon any final judgment or decision of the probate court on the question of heirship. The appeal here is from the only final judgment of the probate court determining that question. Numerous cases are cited. On examination they are found, with the exceptions later noted, to be cases of collateral attacks made in subsequent separate suits or proceedings.

■ There is the further contention that even if the order of the probate court appointing the administrator was not a bar to review of the question of heirship it operated as an estoppel by verdict or findings. The doctrine of estoppel by verdict or findings is to be cautiously applied. Before an estoppel by verdict or findings becomes available it must have passed into a final judgment on the issue in question. A verdict or findings, without judgment thereon, does not work an estoppel. Hutton v. Boucher, 157 Minn. 40, 195 N. W. 495; Dougherty v. Lehigh C. & N. Co. 202 Pa. 635, 52 A. 18, 90 A. S. R. 660; 2 Black, Judgments (2 ed.) § 506. All cases examined in this and other states, with the exception of the California cases noted below, have applied the doctrine of estoppel only where there was a collateral attack on a decision in a separate subsequent suit between the same parties or their privies. The Alabama case of White v. Hill, 176 Ala. 480, 58 So. 444, was a collateral attack in another suit on an order or decree of the probate court or court having probate jurisdiction. The two California cases of Garwood v. Garwood, 29 Cal. 515, and Estate of Pico, 56 Cal. 413, appear to have been based on the case of Barrs v. Jackson, 20 Eng. Ch. 585, which was a collateral attack in a subsequent suit upon an order or decree made by a different court in a prior suit. The two later California cases of Howell v. Budd, 91 Cal. 342, 27 P. 747, and Estate of Harrington, 147 Cal. 124, 81 P. 546, 109 A. S. R. 118, appear to be based on the court's construction of the California statute governing probate proceedings. We find no estoppel by verdict or findings in the present case.

■ The separate order of the probate court made on February 19, 1932, finding that William Firle was the adopted son of decedent, was not appealable under any subdivision of 2 Mason Minn. St. 1927, § 8983. No statute provides for the making of such an order. Not being an appealable order nor one authorized by the probate law, it cannot be held any bar or estoppel to prevent the probate court from determining by its final decree what person or persons are the heirs of the decedent and entitled to have the property assigned to them.

■ There was also an order of the probate court on April 14, 1932, refusing to revoke its order of December 18, 1931, appointing Irwin as administrator. The record does not disclose any appeal from this order, nor do we hold that such order was appealable. It was not an order refusing to remove an administrator on any of the grounds for such removal specified in § 8790 of the statute.

The record discloses nothing to indicate any error in the allowance of the final account of the administrator. But appeal therefrom is statutory, and the motion in the district court to dismiss the order allowing the account states no reason therefor except the claim that the probate court, by the orders of December 18, 1931, and February 19, 1932, had finally adjudged and determined that William Firle was the sole heir of decedent and that appellants had no interest in the estate, which is the ground urged for dismissal of the appeal from the final decree of distribution.

No question of jurisdiction of the probate court over the estate and the parties is involved, and there is no question here of any collateral attack on the orders of the probate court.

The merits of the questions involved in the appeal to the district court are not before us.

The judgment of the district court dismissing the appeal is reversed and the case remanded to that court for further proceedings.

*STONE, Justice* (concurring in result).

I concur in the result because there was no power in the probate court to decide the question of relationship, by adoption or otherwise, at the time and in the manner its decision was attempted. That decision and the resulting order are nullities. In my judgment that is all there is to the case.

But if I am wrong in the foregoing, and there is occasion so to enlarge the field of discussion as to include the effect, as *res adjudicata,* of an order appointing an administrator, I cannot agree with the implications of the third subdivision of the opinion that an order appointing an administrator is nothing more than an order and *always* settles nothing except the mere question of who shall be administrator. The *dictum* quoted from 15 C. J. p. 1021, § 441,

is a mere passing observation, nothing more, taken from Ford v. Ford, 117 Ill. App. 502. However apt it may have been as comment on the Illinois procedure involved in that case, it is simply and obviously untrue as a generalization directed at all probate orders.

2 Mason Minn. St. 1927, § 8772, provides:

"Administration  *  *  *  shall be granted to one or more of the persons hereinafter mentioned, and in the following order:

"1. The surviving spouse or next of kin or both,  *  *  *."

In Austro-Hungarian Consul v. Westphal, 120 Minn. 122, 139 N. W. 300, it is held that the order of preference prescribed by § 8772 is mandatory, and the probate court cannot depart from it. 3 Dunnell, Minn. Dig. (2 ed.) § 3561a. There may be, and frequently has been, stubborn litigation of an issue of marriage or other relationship upon a petition for administration. The probate court's decision of that issue is subject to appeal to the district court, and there the whole matter may be and usually is tried *de novo*. The district court decision in turn may be appealed to this court. If the reasoning given some countenance by the majority is good, all of this labored litigation goes for naught if the issues thereby decided are subject to reopening in the probate proceedings or by the parties to that litigation in any fashion in another case anywhere.

It would be strange indeed if the cases have wrought such an anomalous condition. The resulting exception would be too anachronistic for reasonable explanation. My own study of the cases leads me to the conclusion that a judgment of our probate court is just as effective to put an issue at rest as *res adjudicata* as the judgment of any other superior court. Our probate courts are courts of record. They are superior courts with all the power in their field that any court has. Davis v. Hudson, 29 Minn. 27, 11 N. W. 136. There is no reason, therefore, why their judgments should not have the same deciding and terminating effect as those of any other court of record. The law, I submit, is definitely so settled.

"It has come to be accepted law that where the right to letters of administration of an estate depends. upon relationship to the

intestate (Code, § 2520), and that question is investigated and determined by a court generally jurisdictioned in the premises, and the letters are granted accordingly, that adjudication is conclusive, as to relationship to the decedent and as to the right to distribution, upon parties to that proceeding, and the judgment therein cannot be collaterally assailed in another forum.—Caujolle v. Ferrie, 13 Wall. 465, 20 L. ed. 507; Bouchier v. Taylor, 7 Brown's Parliamentary Cases, 414-432; Barrs v. Jackson, 1 Phillips (Eng. Ch. Rep.) 581; 7 Rose's Notes, pp. 740, 741. Greenleaf, at section 550, makes this statement of the doctrine: '* * * If the grant of administration turned upon the question as to which of the parties was next of kin, the sentence or decree upon that question is conclusive everywhere in a suit between the same parties for distribution.' " White v. Hill, 176 Ala. 480, 487, 488, 58 So. 444, 446.

To the same effect are Garwood v. Garwood, 29 Cal. 515; Estate of Pico, 56 Cal. 413; Howell v. Budd, 91 Cal. 342, 27 P. 747; Estate of Harrington, 147 Cal. 124, 81 P. 546, 109 A. S. R. 118. In the annotation on the subject of "Conclusiveness of probate as res judicata," 21 L. R. A. 680, 685, it is said:

"So far as the parties to the application for letters of administration are concerned the judgment of the court finally determines the relationship of the applicant to the deceased."

The operation of the rule is illustrated in Estate of Harrington, 147 Cal. 124, 81 P. 546, 109 A. S. R. 118. There a claim of widowhood was litigated upon the petition of the alleged widow for a homestead and determined against her. Held *res adjudicata*—by that decision she was estopped from reasserting her claim of widowhood upon a distribution of the estate, the court saying in that connection that the question could not be relitigated even because of new evidence.

In Caujolle v. Ferrie, 13 Wall. 465, 20 L. ed. 507, the proposition is thus put concretely by the headnotes:

"A grant of letters of administration by a court having sole and exclusive power of granting them, and which by statute is obliged to grant them 'to the relatives of the deceased, who would be entitled

to succeed to his personal estate,' is conclusive in other courts on a question of legitimacy; the grant having been made on an issue raised on the question of legitimacy alone, and there having been no question of minority, bad habits, alienage, or other disqualification simply personal."

It was held, accordingly, after a grant under such circumstances, that the question of legitimacy could not be gone into by the complainants on a bill for distribution by the persons who had opposed the grant of letters, against the person to whom they had been granted; but, on the contrary, that the complainants were estopped on that subject.

"As to parties to the proceedings and their privies, but not as to other persons, the granting of letters of administration, being a final judgment, is *res judicata* as to all issues necessarily determined by it, as where a contest turns upon the question whether a child, the alleged intestate, was born alive, or upon the issue of the relationship of the applicant to the decedent." 2 Freeman, Judgments (5 ed.) § 810.

A probate proceeding, being *in rem,* may result in several judgments, each of them final as to the issues it determines. Therein lies one of the differentiations between an action *in rem* and one *in personam,* the latter usually resulting in but one judgment, the final one deciding the whole case. A probate proceeding is like unto a receivership wherein there may be many judgments preceding the one of final distribution. Compare Wilcox Trux, Inc. v. Rosenberger, 169 Minn. 39, 209 N. W. 308, 211 N. W. 822.

Some of the cases deal with collateral attack generally—that is, the questioning of a probate judgment in some other proceeding or court. But if a probate order is a judgment (and that many of them are will not be denied) and there is no appeal, subsequent attack on that judgment in the same court or even in the same proceeding is just as much collateral as though it were in another action, whether in the same or a different court being immaterial.

I am not now contending that a mere order appointing an administrator is decisive of anything other than the right of adminis-

tration. It is not necessary now to come to an opinion on that question. But I do submit that if upon such a petition there is actual litigation and decision of any distinct and relevant issue, such as marriage or other relationship, the order based upon that decision, subject to appeal as it is, amounts to a judgment; and, unless reversed on appeal, it has the usual effect of *res adjudicata,* as bar or estoppel, as the case may be.

*LORING, Justice.*
I concur in the result.

