Norman J. STAHL, et al., Respondents,

v.

James McGENTY, Appellant.

No. C5–91–1933.

Court of Appeals of Minnesota.

June 2, 1992.

Darron C. Knutson, Timothy K. Masterson, Winthrop & Weinstine, St. Paul, for respondents.

Gerald T. Laurie, Andrew E. Tanick, Lapp, Laurie, Libra, Abramson & Thompson, Chartered, Minneapolis, for appellant.

Considered and decided by KALITOWSKI, P.J., and LANSING and SCHUMACHER, JJ.

## OPINION

SCHUMACHER, Judge.

Appellant James McGenty alleges that the trial court erred in denying his motion

to compel arbitration, that such order is presently reviewable, and that the judgment following the jury verdict should be set aside and arbitration ordered. Appellant also alleges the trial court improperly calculated the damages based on the jury's special verdict. We affirm.

## FACTS

Appellant employed respondents in his business. Respondents expressed an interest in buying the company but did not have sufficient cash available. They informed appellant that they would purchase the company if an agreement could be reached whereby the business could generate the profits necessary to repay the loan amount and provide respondents with a reasonable standard of living. Such an agreement was reached, reduced to writing and executed by the parties.

After purchasing the business, respondents became aware that it was not generating the profits they had expected. They were paying appellant $3,000 per month toward the total purchase price of $250,000 plus 9½% interest. After having paid roughly $117,000, respondents stopped making the payments. Respondents also alleged they had put an additional $49,000 into the business through personal loans. Appellant demanded the balance remaining on the promissory note pursuant to an acceleration clause in the purchase agreement.

Respondents commenced an action, alleging fraud in the inducement. Appellant counterclaimed, seeking the unpaid amount due ($208,000) or, in the alternative, seeking return of the company.

Appellant brought several consolidated motions before the trial court. Appellant asked the court to compel arbitration pursuant to an arbitration clause in the agreement. Appellant also asked the court to appoint a receiver or grant "other relief." Appellant alleged this was necessary since respondents controlled the company and could waste the assets. The trial court denied all motions.

The trial court ordered expedited discovery and set a trial date. The parties complied, and appellant never renewed the motion for receivership or the motion to compel arbitration.[1] The case was tried before a jury, which found appellant had fraudulently induced the sale by misrepresenting the company's profits. At trial, the parties agreed that the jury should calculate respondents' "out-of-pocket" damages, if any, if they determined fraud in the inducement had occurred. The jury found fraud and determined that respondents had suffered $80,000 "out-of-pocket" damages.

Appellant, with new counsel, brought motions for judgment notwithstanding the verdict and for a new trial. Appellant alleged the decision denying the motion to compel arbitration was improper. Appellant also alleged that the damages were incorrectly calculated by the trial court. The trial court denied the motions. This appeal followed.

## ISSUES

1. Did the trial court err in refusing to compel arbitration of this dispute?

2. Did appellant waive his right to have the dispute arbitrated?

3. Does the evidence adduced at trial support the damages award?

## ANALYSIS

■ 1. Appellant contends that the trial court's decision must be reversed because the dispute, as litigated, should have been arbitrated. Generally, arbitration is favored as an efficient and inexpensive way to resolve disputes in commercial transactions. *Grover–Dimond Assoc., Inc. v. American Arbitration Ass'n*, 297 Minn. 324, 327, 211 N.W.2d 787, 788 (1973).

■ The courts have created an exception, however, to the preference for arbitration when a party seeks to rescind a fraud-

1. We believe that the trial court's memorandum accompanying the order denying appellant's motions expressed a willingness to re-examine the receivership issue at a later time if appellant could demonstrate the requisite facts. We do not believe, however, that the trial court was also willing to re-examine the arbitration issue.

ulently induced contract. *See Michael–Curry Co. v. Knutson Shareholders Liquidating Trust,* 449 N.W.2d 139, 141 (Minn.1989); *Atcas v. Credit Clearing Corp. of Am.,* 292 Minn. 334, 350, 197 N.W.2d 448, 457 (1972). The courts reason that when the existence of the contract itself is put into issue, those trained in the law who are familiar with contract formation requirements are better suited to adjudicate the dispute. *See id.* Therefore, when the claim is that a contract was fraudulently induced such that rescission is the appropriate remedy, the arbitration clause must indicate that the parties intended to arbitrate this type of dispute or otherwise the exception to the arbitration preference applies, and the dispute is decided before the court. *Id.*

■ It is clear that the arbitration clause in this dispute is insufficient to evince an intent to arbitrate fraud in the inducement. Appellant contends instead that because respondents chose to pursue *damages,* rather than *rescission,* the *Atcas/Michael–Curry* analysis is inapplicable. Case law supports this contention. In *Thayer v. American Fin. Advisers, Inc.,* 322 N.W.2d 599, 604 (Minn.1982), the supreme court stated that, although the arbitration clause was *not* broad enough to cover a claim for fraud in the inducement, the case nonetheless had to be remanded for the trial court to determine whether the plaintiff's choice of remedy (i.e., rescission) was appropriate before the dispute could be removed from arbitration. The *Thayer* decision was following the mandate in *Atcas:*

> "In order to stay arbitration proceedings on the ground of fraud in the inducement of the contract, we hold that the party seeking such relief must properly proceed to avoid the agreement, that is, he *must seek rescission, but not damages * * *.*"

*Thayer,* 322 N.W.2d at 604 (quoting *Atcas,* 292 Minn. at 348, 197 N.W.2d at 456) (emphasis added). This holding follows the rule that a party suing for damages on a fraud claim *is affirming* the contract rather than asking for rescission. *See Henvit*

*v. Keller,* 218 Minn. 299, 301, 15 N.W.2d 780, 781–82 (1944).

Thus, it appears that by bringing an action for damages rather than rescission, respondents elected to affirm the contract rather than rescind it. Accordingly, the general rule favoring arbitration (rather than the exception for a rescission based on fraudulent inducement claims) applies, and the dispute should have been submitted to arbitration.

2. Appellant was entitled to appeal from the trial court's denial of his motion to compel arbitration. Minn.Stat. § 572.26, subd. 1(1) (1990). Appellant, however, proceeded with discovery and a jury trial. Appellant now asks this court to send the dispute back for arbitration. We believe to ignore the jury's verdict would contravene the purpose and rationale behind arbitration. One of the aims of arbitration is to avoid the expense and time involved in litigation. This purpose is not served by compelling arbitration after the litigation is complete. In light of this, the legislature has created an exception to the general rule that orders are not appealable. Minn. Stat. § 572.26, subd. 1(1) specifically allows an immediate appeal from orders denying motions to compel arbitration. *Id.*

■ Appellant contends, however, that even though the order was immediately appealable, all appealable orders are reviewable after final judgment. Appellant cites caselaw which uses language now codified in Minn.R.Civ.App.P. 103.04: "On appeal from a judgment [the appellate courts] may review any order *involving the merits* or affecting the judgments." (Emphasis added.) *See In re Firle's Estate,* 191 Minn. 233, 237, 253 N.W. 889, 891 (1934). We believe the qualifying phrase "involving the merits" is not merely superfluous, as appellant apparently contends.

We believe that the order denying the motion to compel arbitration is not an order "involving the merits or affecting the judgment." This order was merely procedural; a choice of forum in which to *then* resolve the *merits* of the dispute. The order denying appellant's motion to compel arbitration

is not the type of order contemplated by the exception laid down in Rule 103.04.

The present situation is a good example of why Rule 103.04 distinguishes between orders involving the merits of a dispute and those which do not. Rule 103.04 allows the court to review immediately appealable orders even after final judgment when those orders involve the merits because these types of orders go to the substance of the dispute. When the order does not involve the merits, but instead only designates the forum wherein the issues will be determined, reviewing the motion would give a party the proverbial "two bites at the apple." This is not what Rule 103.04 contemplates.

Appellant could have immediately appealed the trial court's refusal to compel arbitration. The time to file such an appeal expired. *See* Minn.R.Civ.App.P. 104.01. The order denying the motion to compel arbitration does not fall within the language of Rule 103.04.

■ 3. Appellant alleges that there is insufficient evidence to affirm the trial court's award of damages. The jury's special verdict form indicated that appellant had fraudulently induced the sale of the business and that $80,000 would fairly compensate respondents for their "out-of-pocket damages" as a result of that fraud. The trial court canceled any amount due on the promissory note and ordered appellant to pay respondents $80,000.

Appellant contends that the trial court should have deducted the $80,000 from the amount still due on the promissory note, resulting in respondents paying about $130,000 to appellant.[2] We believe the trial court correctly calculated the damages as the jury intended.

Both the trial court's instructions and the special verdict form asked the jury to designate an amount which would fairly compensate respondents for their "out-of-pocket damages." We believe "out-of-pocket damages" is susceptible to only one reasonable interpretation—the amount respon-

dents had already paid in excess of the fair market value of the business. The jury was aware of the original purchase price—$250,000—and the amount respondents had paid toward that price—$117,400. The jury also heard that respondents had put an additional $49,000 into the business through personal loans. We believe the only reasonable conclusion that can be drawn from the jury's special verdict is that respondents had already paid in excess of the company's fair market value.

Additionally, the evidence at trial supports the trial court's damages award. Appellant did not introduce evidence of fair market value. He instead elected to rely on the original purchase price. Once the jury concluded that the original purchase price had been fraudulently induced, however, the only alternative evidence available as to the company's fair market value was respondents' testimony.

Respondents testified that the $250,000 purchase price had been calculated based on multiplying the annual profits—represented as $100,000—by 2.5. Respondents testified that the actual annual profits were $30,000–$40,000. These figures would indicate a value of $75,000–$100,000 using the same method the parties had originally used. The jury did not receive alternative evidence of the company's fair market value.

Respondents had paid $117,400 on the promissory note and had contributed an additional $49,000 of their own money to the business. The jury could reasonably have concluded that respondents had thereby paid a total of $166,400 toward the business at the time of trial. The jury found that respondents had incurred "out-of-pocket damages" in the amount of $80,-000. Deducting this amount from the total respondents had paid for the business would indicate a fair market value of $86,-400. This figure coincides with respondents' testimony as to the business' fair market value.

We believe the jury understood its role and calculated respondents' out-of-pocket

2. Appellant calculated this amount according to the amount remaining on the promissory note

plus interest. This calculation was never made at trial or argued to the jury, however.

damages based on respondents' testimony. The jury apparently found respondents credible. The trial court's damages award coincides with the jury's special verdict findings and the trial court's instructions. Furthermore, appellant did not object to the instructions or the theory on which the case was submitted to the jury.

The trial court's damages award is a reasonable interpretation of the jury's special verdict answer, and the award coincides with the evidence adduced at trial.

## DECISION

Because respondents chose to pursue damages rather than rescission on their fraud in the inducement claim, the arbitration clause should have been enforced and arbitration ordered. The order denying appellant's motion to compel arbitration was immediately appealable. Appellant, by proceeding to a jury trial and verdict, waived the right to appeal the order denying his motion to compel arbitration. Because the order denying appellant's motion to compel arbitration is not an order affecting the merits of the dispute, that order is not reviewable under Minn.R.Civ.App. 103.04. The damages award coincides with respondents' evidence adduced at trial and therefore must be affirmed.

Affirmed.

LANSING, Judge (concurring specially).

The majority narrowly interprets Minn. R.Civ.App.P. 103.04 to exclude prior orders involving procedure. On appeal from a judgment the rule permits an appellate court to review "any order involving the merits or affecting the judgment." I read the rule as sufficiently broad to include orders on arbitrability; however, I concur in the result.