IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
NOVEMBER 29, 2006 Session

# ROBERT J. DENLEY CO., INC. v. NEAL SMITH CONSTRUCTION COMPANY, INC., ET AL.

**Direct Appeal from the Chancery Court for Madison County**
**No. 99-0814-1      Walter L. Evans, Chancellor**

_____

**No. W2006-00629-COA-R3-CV - Filed April 19, 2007**

_____

The parties to a construction contract dispute the enforceability of its arbitration provision. The trial court refused to enforce the arbitration provision. The construction company appealed. The developer argues that the arbitration provision is unenforceable because it did not assent to arbitration, or alternatively, the arbitration provision was induced by fraud or unconscionable. The developer also claims that the defendants waived their right to arbitrate, and that they lack standing to enforce the right to arbitrate. For the following reasons, we reverse the decision of the chancery court and remand for entry of an order compelling arbitration.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Ted M. Hayden, Germantown, TN, for Appellants

Julie C. Bartholomew, Somerville, TN, for Appellee

**OPINION**

## I. FACTS & PROCEDURAL HISTORY

On December 5, 1996, Robert J. Denley Company ("Denley") entered into a written contract with Neal Smith Construction Company ("Smith Construction") for the development of the Arlington Place Subdivision in Collierville, Tennessee. Smith Construction was to perform earthwork, clearing, sewer, drainage, curb, and street work upon real property owned by Denley, the developer. The parties executed a standard form American Institute of Architects ("AIA") Contract, which was specifically titled "AIA Document A101, 1987 Edition – Standard Form of Agreement

Between Owner and Contractor." The contract was extensively marked and initialed by the parties, and some provisions were stricken. It was also signed by both parties.

The A101 Contract incorporates by reference another AIA Document entitled "AIA Document A201, 1987 Edition – General Conditions of the Contract for Construction." The A201 Document includes a clause requiring the parties to submit disputes to arbitration. When executing the A101 Document, the parties did not discuss the A201 Document that was incorporated by reference, and neither party signed the A201 Document.

On January 28, 1997, North American Specialty Insurance Company ("the Bonding Company") executed a written performance bond as surety in favor of Denley in the amount of $552,077.00. The Bonding Company thereby obligated itself to Denley for costs and damages if Smith Construction failed to perform under its contract.

A dispute subsequently arose between Denley and Smith Construction, and Denley filed a complaint in Shelby County Chancery Court on September 10, 1999, alleging that Smith Construction had breached its contract. Denley sought recovery from both Smith Construction and its surety, the Bonding Company. The defendants filed an answer setting forth various affirmative defenses but did not mention the contract's arbitration clause. Denley served the defendants with interrogatories and requests for production of documents, but the defendants did not respond. The defendants filed a motion to compel arbitration on April 26, 2000. Denley moved the court to dispose of the motion on January 4, 2006, and it filed a memorandum opposing the motion on February 14, 2006, which asserted various contract defenses in support of its position that the arbitration provision was unenforceable. The court held a hearing on the motion to compel arbitration and entered an order denying the motion without explanation on February 21, 2006. At the hearing, the trial judge stated his opinion that neither of the parties had knowingly agreed to the arbitration provision, and because there was no meeting of the minds, the provision was unenforceable.

The defendants appealed to this Court on March 17, 2006, and filed a motion in the trial court requesting an order staying the proceedings pending the appeal. The trial court denied the defendants' motion for an order staying the proceedings, and it ordered the defendants to respond to Denley's discovery requests. The defendants filed a motion for review of the stay order in this Court pursuant to Tenn. R. App. P. 7 (2006). We granted the motion and entered an order staying all proceedings in the trial court pending this appeal. Denley filed a "Motion to Reconsider," which we treated as a Petition for Rehearing and denied on May 16, 2006.

## II. Issues Presented

Appellants have timely filed their notice of appeal[1] and present the following issues for our review:

1.      Whether the chancellor below erred in denying the Motion to Compel Arbitration and thereby refusing to enforce the arbitration provision agreed to by the parties.

Additionally, Appellee presents the following issues for review:

2.      Whether the trial court correctly ruled that, due to a lack of mutual assent, the arbitration provision was unenforceable, or
3.      Whether the agreement to arbitrate was induced by fraud;
4.      Whether the agreement to arbitrate was unconscionable;
5.      Whether the defendants waived their right to arbitration;
6.      Whether the defendants have standing to enforce the arbitration provision.

For the following reasons, we find that the arbitration agreement is enforceable and reverse the decision of the chancery court.

## III. Standard of Review

The interpretation of a contract is a matter of law that we review under a *de novo* standard. ***Guiliano v. Cleo, Inc.***, 995 S.W.2d 88, 95 (Tenn. 1999). A trial court's conclusions of law are afforded no presumption of correctness. ***Union Carbide Corp. v. Huddleston***, 854 S.W.2d 87, 91 (Tenn. 1993) (citing *Estate of Adkins v. White Consol. Indus., Inc.*, 788 S.W.2d 815, 817 (Tenn. Ct. App. 1989)).

## IV. Discussion

### A.   Mutual Assent

Although the cardinal rule of contract interpretation is that the court must attempt to ascertain and give effect to the parties' intentions, when the language of a contract is plain and unambiguous, the court must determine their intentions from the four corners of the contract, interpreting and enforcing it as written. ***Int'l Flight Ctr. v. City of Murfreesboro***, 45 S.W.3d 565, 570 (Tenn. Ct. App. 2000). "A contract is not rendered ambiguous simply because the parties disagree as to the interpretation of one or more of its provisions." ***Id.*** Instead, a contract is ambiguous only if its meaning is uncertain and susceptible to more than one reasonable interpretation. ***Id.*** We must examine the language of the contract, giving each word its "usual, natural, and ordinary meaning." ***Id.***

---

[1]   Tenn. Code Ann. § 29-5-319(a)(1) (2000) provides that an appeal may be taken from an order denying an application to compel arbitration. Although no final judgment has been entered, the statute allows an appeal to "be taken in the manner and to the same extent as from orders or judgments in a civil action." Tenn. Code Ann. § 29-5-319(b).

First of all, we find it necessary to address Denley's contention that the A101 Contract signed by the parties did not contain language sufficient to incorporate the A201 Document. The A101 Contract contained the following italicized provision on the first page just beneath its heading:

> *The 1987 Edition of the AIA Document A201, General Conditions of the Contract for Construction, is adopted in this document by reference. Do not use with other general conditions unless this document is modified.*

In addition, Article 1 entitled "The Contract Documents" states:

> The Contract Documents consist of this Agreement, Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, addenda issued prior to execution of this Agreement, other documents listed in this Agreement and Modifications issued after execution of this Agreement; these form the Contract, and are as fully a part of the contract as if attached to this Agreement or repeated herein. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. An enumeration of the Contract Documents, other than Modifications, appears in Article 9.

Article 9 contains the following provisions:

> **9.1.1** The Agreement is this executed Standard Form Agreement Between Owner and Contractor, AIA Document A101, 1987 Edition.
>
> **9.1.2** The General Conditions are the General Conditions of the Contract for Construction, AIA Document A201, 1987 Edition.

Other provisions in Article 9 describing "Supplementary and Other Conditions," "Specifications," "Addenda," and "Other Documents" were either stricken through or marked "NOT APPLICABLE" and initialed by the parties.

Denley argues that these provisions of the A101 Contract only indicate that a document *may* be incorporated by reference, and an ambiguity exists regarding whether the parties intended to incorporate the A201 Document and its arbitration clause. We disagree. The first page of the A101 Contract plainly reads in italicized font: "*The 1987 Edition of the AIA Document A201, General Conditions of the Contract for Construction, **is** adopted in this document by reference.*" (emphasis added). The second page addressing "Contract Documents" states that certain other Documents "form the Contract, and **are** as fully a part of the contract as if attached to this Agreement or repeated herein." (emphasis added). Article 9 addresses these other Documents specifically, and the parties had stricken through several provisions, leaving only the Agreement Document A101, General Conditions Document A201, and certain Drawings listed as the Contract Documents. We find this

-4-

language to be unambiguous, and conclude that the A201 Document and its arbitration provision were incorporated by reference and are therefore enforceable.[2]

In fact, we have previously addressed the issue of whether the AIA Contract A101 incorporates by reference the AIA Document A201 and its arbitration clause in ***T.R. Mills Contractors, Inc. v. WRH Enters., LLC***, 93 S.W.3d 861 (Tenn. Ct. App. 2002). In *T.R. Mills*, one party had not signed the A101 Contract, and neither had signed the A201 Document. *Id.* at 864. We noted that "in Tennessee, otherwise binding written contracts need not be signed in order for an arbitration clause contained therein to be enforceable." *Id.* at 870. The key is mutual assent to be bound, and in determining mutuality of assent, we use an objective standard based on the parties' manifestations. *Id.* at 866. After we concluded that the non-signing party had assented to the A101 Contract, we considered "whether the incorporation by reference of the AIA A201 General Conditions, without specific reference to an arbitration clause, is sufficient to bind WRH to arbitration." *Id.* at 870. The non-signing party contended that he never agreed to arbitrate, he did not read the agreement, and he did not know that the A201 Document contained an arbitration clause. *Id.* Nevertheless, we held that the arbitration provision was incorporated by reference and enforceable. *Id.*

> Courts addressing this issue have held that a written but indirect agreement to arbitrate is enforceable as long as it is clear. David D. Siegel, N.Y. Prac., *Arbitration* § 588 (3rd ed.1999). When there is a clear relationship between a written agreement containing an arbitration clause and a written supplemental agreement that does not contain such a clause, disputes arising under the supplemental agreement will be subject to arbitration under the original agreement. *Id.* When a written contract makes the terms of another written instrument a part of it, the two instruments are construed together as the agreement between the parties. *McCall v. Towne Square, Inc.*, 503 S.W.2d 180, 183 (Tenn.1973). Applying these ordinary contract principles, we hold that the incorporation by reference of the A201 General Conditions, which contain an arbitration clause, was sufficient to bind these parties to arbitration.

---

[2] Denley contends that the terms of the A201 Document require both parties to sign it in addition to the A101 before they will be bound to both Documents. The A201 Document provides that "Contract Documents shall be signed by the Owner and Contractor *as provided in the Agreement*. If either . . . or both do not sign all the Contract Documents, the Architect shall identify such unsigned Documents upon request." (emphasis added). The A201 Document does not provide signature lines, and the A101 Document does not mention a requirement that the A201 be signed in order to be incorporated by reference.

By statute in Tennessee, an agreement to arbitrate must only be written, it need not be signed. *See* Tenn. Code Ann. § 29-5-302 (2000); *T.R. Mills*, 93 S.W.3d at 868. Because the terms of this agreement do not clearly require that the A201 also be signed, and the agreement may still be enforced by law as long as it is written, we have determined that the A201 is an enforceable part of the agreement even though it was not also signed.

***T.R. Mills***, 93 S.W.3d at 870. In addition, we found the non-signing party's contention that "he should not be bound to an arbitration clause of which he was unaware because he never read the A201 General Conditions" to be without merit. ***Id.*** at 871. Besides being an experienced developer who had used the AIA contract on previous occasions, the contract clearly provided that the General Conditions were incorporated, and it was not hidden or indecipherable so that it would be unfair to expect him to be aware of the provision. ***Id.*** He could not simply disavow the terms of the contract because he failed to read it. ***Id.***

In the present case, Denley also emphasizes that the parties did not discuss the General Conditions or the arbitration provision when they executed the contract. Denley maintains that it had no knowledge of the arbitration provision, and it contends that without that knowledge, it could not assent to be bound to arbitrate. Denley also refers to the deposition testimony of Mr. Jeffrey Smith, the representative of Smith Construction who signed the contract, where he stated that he was unfamiliar with the terms of the General Conditions Document. Mr. Smith also contended that he did know there was an arbitration clause in the A201 Document. According to Denley, neither party knew of the arbitration provision, and therefore there was no mutual assent to be bound by the provision.

Although we agree that mutual assent is essential to the formation of a contract, mutual assent is gathered from the language of the contract rather than the unexpressed or undisclosed intentions of the parties. ***Gates, Duncan & Vancamp Co. v. Levatino***, 962 S.W.2d 21, 25 (Tenn. Ct. App. 1997). "The law conclusively presumes that the parties to a contract understood its obligations, and evidence is not admissible to show that their understanding was in fact otherwise." ***Id.*** Additionally, a preliminary discussion is not essential to the formation of a contract. ***Richardson v. McGee***, 193 Tenn. 500, 246 S.W.2d 572, 574 (1952); ***Sutton v. First Nat'l Bank of Crossville***, 620 S.W.2d 526, 530 (Tenn. Ct. App. 1981). A written contract is to be enforced according to its written terms, without regard to the parties' preliminary discussions. ***Richardson***, 246 S.W.2d at 574.

In this case, Denley signed the A101 Contract that incorporates by reference the A201 Document and its arbitration clause. The parties had extensively marked and modified the A101 Document, and just as in *T.R. Mills*, a party "cannot disavow the terms of the contract simply because he failed to read it." 93 S.W.3d at 871.

> 'To permit a party, when sued on a written contract, to admit that he signed it but to deny that it expresses the agreement he made or to allow him to admit that he signed it but did not read it or know its stipulations would absolutely destroy the value of all contracts.' 12 Am.Jur., 629. 'In this connection it has been said that one is under a duty to learn the contents of a written contract before he signs it, and that if, without being the victim of fraud, he fails to read the contract or otherwise to learn its contents, he signs the same at his peril, and is estopped to deny his obligation, will be conclusively presumed to

know the contents of the contract, and must suffer the consequences of his own negligence.' 17 C.J.S., Contracts, § 137, pages 489, 490.

" 'It will not do, for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written. But such is not the law.' *Upton v. Tribilcock,* 91 U.S. 45, 23 L.Ed. 203; *Berry v. Planters Bank,* 3 Tenn.Ch., 69; *Lockhart v. Moore,* 25 Tenn.App. 456, 466, 159 S.W.2d 438; *Federal Land Bank of Louisville v. Robertson,* 20 Tenn.App. 58, 63, 95 S.W.2d 317.

**Giles v. Allstate Ins. Co., Inc.**, 871 S.W.2d 154, 157 (Tenn. Ct. App. 1993) (citing *Beasley v. Metropolitan Life Ins. Co.*, 190 Tenn. 227, 229 S.W.2d 146 (1950)).

Denley also claims that when one party signs a printed form contract furnished by another party, "there must be evidence that the term was within the 'circle of assent.'" Denley then cites the following language used by the Middle Section of this Court in **Parton v. Mark Pirtle Oldsmobile-Cadillac-Isuzu, Inc.**, 730 S.W.2d 634, 638 (Tenn. Ct. App. 1987):

the party who signs a printed form furnished by the other party will be bound by the provisions in the form over which the parties actually bargained and such other provisions that are not unreasonable in view of the circumstances surrounding the transaction.

When discussing this language in another case, the Court distinguished *Parton* as involving "exceptional circumstances[3] that enabled us to relieve the signatories from the normal rule that a party is bound by all the provisions of a written contract that he signs." **One Stop Supply, Inc. v. Ransdell**, No. 01-A-01-9509-CV-00403, slip op. at 4 (Tenn. Ct. App. M.S. Apr. 19, 1996). Thus, *One Stop* clarifies that the "normal rule" still binds a party to the contract he signs unless some exceptional circumstances exist, and we find no such circumstances in this case so that Denley should be allowed to disavow the terms of the contract.

Applying ordinary contract principles and the objective standard required when determining mutuality of assent, we find that both parties manifested their assent to the arbitration provision by signing the A101 Contract that clearly incorporated by reference the A201 General Conditions Document. The incorporation by reference of A201 was not hidden or indecipherable so that a

---

[3] In *Parton*, a consumer had signed a repair order to have his Cadillac serviced, and the car was later stolen from the repair shop's rear parking lot. 730 S.W.2d at 635. The Court did not enforce an exculpatory clause in small print on the work order after concluding that "a person of ordinary intelligence and experience" would not expect this type of provision to be included in a section headed "Terms cash unless arrangements made." *Id.* at 638.

person of ordinary intelligence and experience would not be aware of the provision. Therefore, the arbitration clause is enforceable unless other grounds exist to render it invalid.[4]

## B.    *Fraudulent Inducement* [5]

Denley also claims that the agreement to arbitrate was induced by Smith Construction's fraud. Denley contends that *if* Smith Construction's representative did know of the arbitration provision, he had a duty to disclose the provision to Denley, and his failure to do so was an "act of deception" that induced Denley to enter into the contract.[6]

---

[4] If the chancellor reached the correct result for the wrong reason, we may still affirm its order on a proper basis. ***Allen v. National Bank of Newport***, 839 S.W.2d 763, 765 (Tenn. Ct. App. 1992). Denley asserts that various other grounds exist for denying enforcement of the arbitration clause, and we will now turn to these defenses in order to determine whether the arbitration provision was, in fact, unenforceable.

[5] The A201 Document provides that the contract shall be governed by the law of the place where the project is located, which is Tennessee. Although the contract's arbitration clause is broad, it is to be read along with the additional qualification that Tennessee law governs its scope and interpretation. In effect, the parties have agreed to arbitrate their disputes to the extent allowed by Tennessee law. ***See Frizzell Constr. Co., Inc. v. Gatlinburg, LLC***, 9 S.W.3d 79, 85 (Tenn. 1999). Because "Tennessee law contemplates judicial resolution of contract formation issues," these claims are to be withheld from arbitration and decided by the courts. ***Id.***

[6] At oral argument, Denley alternatively argued that if Mr. Smith did not know of the arbitration provision, the parties operated under a mutual mistake in signing the contract. This issue was not presented in Denley's brief. "A 'mistake' is an act which would not have been done, or an omission which would not have occurred, but from ignorance, forgetfulness, inadvertence, mental incompetence, surprise, misplaced confidence, or imposition, and it must be mutual or fraudulent." ***Williams v. Botts***, 3 S.W.3d 508, 509-510 (Tenn. Ct. App. 1999) (citing *Town of McMinnville v. Rhea*, 44 Tenn.App. 612, 316 S.W.2d 46 (1958)). However,"inattention, as distinguished from mistake, is no ground for reformation." ***Silsbe v. Houston Levee Indus. Park, LLC***, 165 S.W.3d 260, 266 (Tenn. Ct. App. 2004) (citing *Myrick v. Johnson*, 25 Tenn.App. 483, 160 S.W.2d 185, 188 (1941)). For a court to rewrite or reform a contract, the intent of both parties must be clear and must be the same. ***Russell v. Security Ins., Inc.***, No. 01A01-9803-CV-00135, slip op. at 4 (Tenn. Ct. App. M.S. Feb.18, 1999). Reformation is only appropriate if a mutual mistake has been shown by "clear, cogent, convincing evidence." ***Lane v. Spriggs***, 71 S.W.3d 286, 290 (Tenn. Ct. App. 2001) (citing *Dixon v. Manier*, 545 S.W.2d 948, 950 (Tenn. Ct. App.1976)). "There is a presumption that a writing expresses the intention and understanding of the parties." ***Knoxville's Cmty Dev. Corp. v. Woodfam Invs., L.P.***, No. E1999-02317-COA-R3-CV, slip op. at 3 (Tenn. Ct. App. E.S. July 24, 2000) (citing *Davidson v. Greer*, 35 Tenn. 384 (Tenn.1855); *Kyle v. Kyle*, 74 S.W.2d 1065 (Tenn.Ct.App.1934)). Relief grounded in mistake is to be granted with caution, only when the right thereto is clearly established. ***Greer v. J.T. Fargason Grocer Co.***, 4 Beeler 242, 77 S.W.2d 443, 444 (Tenn. 1935).

In this case, Denley maintains that its representative had no knowledge of the A201 Conditions Document or its arbitration clause being incorporated by reference. In his deposition, Mr. Smith stated that he did not know whether the standard AIA Contract incorporates any other documents by reference. However, he went on to say that "there is a general conditions that goes along with it," and he said that he was aware of the arbitration clause contained in the conditions. Considering the parties' testimony, it is not clear that both parties operated under a mutual mistake in signing the contract that incorporated the arbitration clause. Unless both parties' intentions were clear and were the same, we cannot reform the contract in accordance with those intentions. The parties' conflicting testimony about their intentions does not constitute clear and convincing evidence sufficient to overcome the presumption that their intentions were as written in the contract. Therefore, we find it equitable to refuse Denley's invitation to reform the parties' contract.

In the trial court, Denley had presented the affidavit of its contracting representative, Mr. Robert Denley, who stated that the parties never discussed an arbitration provision. The elements of a claim for fraudulent inducement to contract include:

> (1) a false statement concerning a fact material to the transaction; (2) knowledge of the statement's falsity or utter disregard for its truth; (3) intent to induce reliance on the statement; (4) reliance under circumstances manifesting a reasonable right to rely on the statement; (5) an injury resulting from the reliance. *Lowe v. Gulf Coast Dev., Inc.*, No. 01-A-01-9010-CH-00374, 1991 WL 220576, at *7 (Tenn. App. Nov.1, 1991); *Fite ex rel. H & M Constr. Co., Inc. v. Fite*, 1999 WL 317102, at *6 (Tenn. App. May 19, 1999).

***Lamb v. MegaFlight, Inc.***, 26 S.W.3d 627, 630-31 (Tenn. Ct. App. 2000). Because Denley does not allege that Mr. Smith made any type of false statement upon which Mr. Denley reasonably relied, we must determine whether Mr. Smith had a duty to affirmatively point out the arbitration clause to Mr. Denley.

Concealment or non-disclosure of facts may also constitute fraud, if the party charged with fraud had knowledge of an existing fact or condition and a duty to disclose the fact or condition. ***Lonning v. Jim Walter Homes, Inc.***, 725 S.W.2d 682, 685 (Tenn. Ct. App. 1986) (citing *Dozier v. Hawthorne Dev. Co.*, 37 Tenn.App. 279, 292, 262 S.W.2d 705, 711 (1953)). "A party to a contract has a duty to disclose to the other party any material fact affecting the essence of the subject matter of the contract, unless ordinary diligence would have revealed the undisclosed fact." ***Id.*** (citing *Simmons v. Evans*, 185 Tenn. 282, 285-86, 206 S.W.2d 295, 296 (1947)). There is no duty to disclose a material fact if it was apparent through "common observation" or if it would have been discoverable through the exercise of ordinary diligence. ***Daniels v. Basch***, No. M2004-01844-COA-R3-CV, slip op. at 4 (Tenn. Ct. App. M.S. Oct.27, 2005) (citing *Simmons v. Evans*, 185 Tenn. 282, 206 S.W.2d 295, 296 (Tenn.1947); *Patel v. Bayliff*, 121 S.W.3d 347, 353 (Tenn. Ct. App. 2003)).

In this case, Mr. Smith did not have a duty to further "disclose" the arbitration provision to Mr. Denley because it was apparent through "common observation," or would have been discoverable through the exercise of ordinary diligence. The contract signed by Mr. Denley mentioned the A201 Document that was incorporated by reference in three different locations, including on the first page just beneath the heading in italicized font. Mr. Denley initialed or signed every page of the A101 Document and marked some provisions as "not applicable." As discussed earlier:

> if, without being the victim of fraud, [a party] fails to read the contract or otherwise to learn its contents, he signs the same at his peril, and is estopped to deny his obligation, will be conclusively presumed to know the contents of the contract, and must suffer the consequences of his own negligence.

*Giles*, 871 S.W.2d at 157. If Mr. Denley did not know that the A201 General Conditions were incorporated by reference, his lack of knowledge was not caused by any fraud on the part of Mr. Smith, but rather by Mr. Denley's own negligence in not carefully reading the contract. We find this issue to be without merit.

### C.   Unconscionability

Denley also asserts on appeal that "the parties' contract is clearly a contract of adhesion," and to force it to arbitrate its disputes would be "exceedingly harsh and oppressive."

A contract of adhesion has been defined as "a standardized contract form that was offered on essentially a 'take it or leave it' basis without affording [a party] a realistic opportunity to bargain." *Taylor v. Butler*, 142 S.W.3d 277, 286 (Tenn. 2004) (citing *Black's Law Dictionary* 40 (6th ed. 1990)). A court will not enforce an adhesion contract when its terms are "beyond the reasonable expectations of an ordinary person, or oppressive or unconscionable." *Id.* If the terms are oppressive to the weaker party or serve to limit the obligations and liabilities of the stronger party, the contract will not be enforced. *Id.*

We need not address the issue of whether the contract was one of adhesion if we determine that the arbitration provision was not "beyond the reasonable expectations of an ordinary person, or oppressive or unconscionable." *See Chapman v. H&R Block Mortgage Corp.*, No. E2005-00082-COA-R3-CV, slip op. at 4 (Tenn. Ct. App. E.S. Nov.28, 2005). Even an adhesion contract is enforceable if it is reasonable and not unconscionable or oppressive. *Id.*

A contract may not be enforced on grounds of unconscionability where the "inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other." *Taylor*, 142 S.W.3d at 285 (citing *Haun v. King*, 690 S.W.2d 869, 872 (Tenn. Ct. App. 1984)). The provisions of an unconscionable contract are so one-sided that the contracting party is denied any opportunity for meaningful choice. *Id.* For example, an arbitration clause was found to be unenforceable in *Taylor* where a car buyer was forced to arbitrate any disputes against a car dealership, but the dealer could proceed with any claims against the buyer in court. *Id.* at 280.

In Tennessee, arbitration agreements in contracts are favored, both by statute and case law. *Benton v. Vanderbilt Univ.*, 137 S.W.3d 614, 617 (Tenn. 2004). Our legislature has sought to encourage the arbitration of disputes, thereby facilitating and promoting "a quicker, more cost effective, less cumbersome, yet binding means of dispute resolution." *T.R. Mills*, 93 S.W.3d at 868 (citing *Buraczynski v. Eyring*, 919 S.W.2d 314, 317 (Tenn. 1996)). We have previously explained that an agreement to arbitrate does not affect the parties' rights and duties, but instead, it "simply shifts the forum of dispute settlement." *Id.* Denley acknowledges this Court's previous comments about arbitration but disagrees with our statements, arguing that a decision to arbitrate involves a waiver of certain significant rights such as the right to a jury trial. Tennessee courts have often faced

this type of argument by parties asserting that an agreement to arbitrate "constituted an unknowing waiver of his statutory and constitutional rights." *Flanary v. Carl Gregory Dodge of Johnson City, LLC*, No. E2004-00620-COA-R3-CV, slip op. at 12 (Tenn. Ct. App. E.S. May 31, 2005). Parties claim that the arbitration process is not capable of resolving their dispute in accordance with the law, or protecting a person's interest. *Id.* Still, when faced with this general attack on arbitrability, courts have found no reason why disputed matters could not be fairly arbitrated. *See id*; *see also Chapman*, slip op. at 7. Likewise, we find no basis for concluding that arbitration cannot fairly and effectively resolve these parties' disputes.

The arbitration provision in the contract at issue is not so one-sided or unreasonable to be considered unconscionable, and it is not beyond the expectations of a reasonable person so that it should not be enforced. In fact, the AIA documents are the most commonly utilized documents in the construction process. 12 Nancy Fraas Maclean, *Tennessee Practice Series Legal Forms – Real Estate* § 12:1 (2006). Although Denley argues that it was not afforded any meaningful choice as to the arbitration provision because it had no knowledge of it, we have already determined that if Denley lacked knowledge of the provision, it was the result of his own negligence. We find the argument that the agreement to arbitrate was unconscionable to be without merit.

### D.    Waiver of the Right to Arbitrate

Next, we consider Denley's contention that the defendants waived their right to arbitrate by filing an answer in the chancery court and waiting until after Denley had served the defendants with interrogatories and requests for production of documents to demand that the disputes be arbitrated.

In Tennessee, the right to arbitrate can be waived just like any other contract right. *Leon Williams Gen. Contractor, Inc. v. Hyatt*, No. E2001-00434-COA-R3-CV, slip op. at 3 (Tenn. Ct. App. E.S. Feb. 7, 2002). "One of the aims of arbitration is to avoid the expense and time involved in litigation. This purpose is not served by compelling arbitration after the litigation is complete." *Mitchell v. Owens*, 185 S.W.3d 837, 840 (Tenn. Ct. App. 2005) (citing *Stahl v. McGenty*, 486 N.W.2d 157, 159 (Minn. Ct. App. 1992)). However, to be consistent with the public policy in favor of arbitration, there is a generally recognized presumption against waiver of the right to arbitrate. *Chapman v. H&R Block Mortgage Corp.*, No. E2005-00082-COA-R3-CV, slip op. at 13 (Tenn. Ct. App. E.S. Nov.28, 2005). A party seeking to prove waiver of an agreement to arbitrate bears a heavy burden. *Id.* In order to prevail on this claim, he must show that the other party knew of their right to arbitrate, acted inconsistently with that right, and, in doing so, prejudiced the complaining party by their actions. *Id.* (citing *Owner-Operator Indep. Drivers Ass'n, Inc., v. Swift Transp. Co., Inc.*, 288 F.Supp.2d 1033, 1034 (D. Ariz. 2003)). "[T]he court must resolve any doubt as to whether a waiver occurred in favor of a finding of arbitrability." *Id.*

By way of example, a party was deemed to have waived his right to arbitrate claims when a trial court dismissed his request for arbitration, and he did not appeal the order at that time but proceeded to trial and a final judgment. *Mitchell v. Owens*, 185 S.W.3d 837, 838 (Tenn. Ct. App. 2005). On the other hand, a party who filed a complaint in a chancery court and later demanded

arbitration of the claims was found *not* to have waived his right to arbitrate. ***Leon Williams Gen. Contractor, Inc. v. Hyatt***, No. E2001-00434-COA-R3-CV, slip op. at 4 (Tenn. Ct. App. E.S. Feb. 7, 2002). In another case, a party did not waive its right to arbitrate claims even though it answered the complaint, discovery had commenced and it responded to interrogatories, two motions had been filed and heard, restraining orders had been entered, and a default judgment was entered against a separate defendant. ***Chapman***, slip op. at 15. The Court of Appeals in that case found that the activity was "neither so inconsistent with arbitration as to show an abandonment of that right, nor has it prejudiced Ms. Chapman to such a degree as to warrant a finding of waiver." ***Id.***

Similarly, we find that the defendants' filing of an answer in this case was not so inconsistent with the right to arbitrate as to demonstrate an abandonment of that right, and Denley was not prejudiced by their delay in demanding arbitration. Thus, the defendants did not waive their right to arbitrate the disputes.

### E.    Standing

Denley also challenges the standing of both Smith Construction and the Bonding Company to enforce the arbitration clause. It appears that Smith Construction is now a dissolved corporation, and Denley argues that "the real party" who will assume the obligation for any breach of the contract is the Bonding Company. Denley contends that because the Bonding Company was not a named party to the original contract containing the arbitration provision, it cannot compel Denley to arbitrate the disputes.

We begin by noting that the dissolution of a corporation does not prevent the commencement of a proceeding against the corporation in its corporate name. Tenn. Code Ann. § 48-24-105(b)(5) (2002). When a corporation dissolves, its existence ceases "except that the termination of corporate existence shall not take away or impair any remedy to or against the corporation, its directors, officers or shareholders, for any right or claim existing or any liability incurred, prior to such termination." Tenn. Code Ann. § 48-24-101(b) (2002). "Any such action or proceeding by or against the corporation may be prosecuted or defended by the corporation in its corporate name. The shareholders, directors, and officers have the power to take such corporate or other action as may be appropriate to protect such remedy, right, or claim." ***Id.*** In this case, Mr. Jeffery Smith was an officer and shareholder of Neal Smith Construction and could defend the action in the company's corporate name.

Denley also submits that the Bonding Company has no standing to compel arbitration. This same issue was encountered in ***Tipton County Dept. of Pub. Instruction v. Delashmit Elec. Co.***, No. 02A01-9704-CH-00084, slip op. at 2 (Tenn. Ct. App. W.S. Apr.7, 1998). Two parties had entered into a contract for the performance of electrical work, and the contract incorporated an arbitration clause by reference. ***Id.*** The electric company provided a performance bond issued by an insurance company, and the bond incorporated by reference the terms of the original contract between the principal parties. ***Id.*** When a suit was filed against the electric company and its bonding company, the plaintiff argued that the bonding company, as a third party surety, could not enforce the

arbitration provision in the original agreement. *Id.* We rejected the plaintiff's argument and determined that, as surety, the bonding company could assert the rights of the principal to the contract even though it was not a party to the original contract. *Id.* at 5. The bonding company "does not have to be a signatory to the contract when the contract is specifically incorporated by reference in the surety bond." *Id.* (citing *Exchange Mut. Ins. Co. v. Haskell Co.*, 742 F.2d 274 (6th Cir. 1984)).

Here, the Bonding Company's performance bond also incorporated by reference the contract between the principal parties,[7] Denley and Smith Construction, which included the arbitration provision. As surety, the Bonding Company can assert the right of Smith Construction to arbitrate even though the Bonding Company was not a signatory to the original contract. Denley's argument is without merit.

## V. CONCLUSION

For the aforementioned reasons, we reverse the decision of the chancery court and remand for entry of an order compelling arbitration. Costs of this appeal are taxed to Appellee, Robert J. Denley Co., for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE

---

[7] The Performance Bond states:

> WHEREAS, [Neal Smith Construction Co., Inc.] has by written agreement dated December 5, 1996 entered into a Contract with [Robert Denley Company, Inc.] for Arlington Place Subdivision, New Collierville - Arlington Road in accordance with drawings and specifications . . . which Contract is by reference made a part hereof, and is hereinafter referred to as the Contract.